FIRST NATIONAL BANK OF NEPHI, A CORPORA-
TION, RESPONDENT, v. CHARLES FOOTE, W. A. C.
BRYAN, APPELLANTS, IMPLEADED WITH W. S.
TINGEY AND ALMA HAGUE.[1]

1. PROMISSORY NOTES.—INADMISSIBILITY OF PAROL TESTIMONY TO
CONTRADICT OR VARY. — CONTEMPORANEOUS PAROL AGREE-
MENT.—In an action by a bank upon a promissory note against
the joint makers, the latter cannot show, for the purpose of
escaping liability, a contemporaneous parol agreement that
they signed it on representations of plaintiff's cashier, that it
was intended as a mere matter of form and that they would
not be called upon to pay it, since such statements in effect
negatives the written promise and violates the well settled
rule that parol testimony is inadmissible to vary or contradict
the terms of a written instrument.

2. ID.—JOINT MAKERS.—PRESUMPTION OF CONSIDERATION.—In an
action by a payee upon a promissory note against joint makers,
proof that one maker signed without consideration is not
sufficient to destroy the presumption of consideration arising
from the note itself, where it is not affirmatively shown that
no consideration moved to either of the other joint makers.

3. ID.—ID.—CONTEMPORANEOUS PAROL AGREEMENT.—WHEN KNOWL-
EDGE OF AGENT NOT IMPUTED TO PRINCIPAL.—A bank that

---

[1] Rehearing denied Dec. 9, 1895.

takes a note for value before maturity signed by its cashier and others as joint makers, is not chargeable with knowledge of an agreement between the cashier and his co-makers that the note was not to be delivered until it was signed by the president of the bank, since in this particular transaction, on account of his individual interest adverse to that of the bank, the cashier is not the agent of the bank, but stands on the opposite side with his co-makers.

4, ID.—ID.—ID.—RATIFICATION.—A bank, by bringing suit upon a note taken for value before maturity signed by its cashier and others does not thereby ratify the cashier's representations to his co-makers that the note would not be delivered to the bank until signed by its president.

5. NEGOTIABLE INSTRUMENTS TAINTED WITH FRAUD. — PRESUMPTION.—SHIFTING OF BURDEN OF PROOF.—When the holder of a negotiable instrument tainted with fraud, shows that he obtained it for full value before maturity, a presumption then arises that it was acquired in good faith without notice of the fraud. The burden then devolves upon the defendant to show that the note was taken with actual knowledge of the condition constituting its infirmity.

(No. 593. Decided Nov. 6, 1895. 42 P. R. 205.)

APPEAL from the District Court of the First Judicial District. Hon. H. W. Smith, *Judge.*

Action by the First National Bank of Nephi, a corporation, against Charles Foote and W. A. C. Bryan, appellants, impleaded with W. S. Tingey and Alma Hague. From a judgment for plaintiff, defendants Foote and Bryan appeal. *Affirmed.*

*Messrs. Sutherland & Murphy* and *Mr. Andrew Howat,* for appellants.

The court below erred in directing the jury peremptorily to find a verdict in favor of the plaintiff for $3,000. 1. That sum includes $500 of interest computed at two per cent a month. R. S. U. S. §§ 5197, 5198; *National Bank*

v. *Johnson,* 104 U. S. 271. 2. There was very convincing evidence tending to show that there was no consideration to the notes. The supposed consideration is disclosed by Hague, plaintiff's cashier. He stated to appellants for what he desired them to sign the notes, and therefore no other can be inferred. It was merely the money the bank had paid for land deeded to Paxman. As these appellants were not concerned in that purchase, had not requested or been consulted about it, and were not benefited by it, that payment by the bank could not be a consideration for these notes. The bank has the land and there is not the slightest ground for it to ask to have anybody refund the money paid for it. 3. There was evidence for the jury to consider tending to show, and, being uncontradicted and credible, showing that the notes were not to be the notes until signed by Geo. C. Whitmore, and that he did not sign any one of them. This agreement was made by the plaintiff; the acts of the plaintiff's cashier were its acts. What one does by another, he does by himself. The plaintiff avails itself of this act of the cashier in obtaining these notes by bringing this action. Those acts are thus necessarily adopted in toto. Here was precedent authority, and subsequent adoption and ratification, necessarily including all the acts and representations and assurances which accompanied the procuring of the notes. Mechem on Agency, §§ 714, 715, 130, 148, 151; *Packet Co.* v. *Clough,* 20 Wall. 540; *Vicksburg, etc., R. R. Co.* v. *O'Brien,* 119 U. S. 119; *Crane* v. *Hunter,* 28 N. Y. 389; *Laird* v. *Campbell,* 100 Pa. St. 164; *Caley* v. *Railroad Co.,* 80 Id. 363; *Bennett* v. *Judson,* 21 N. Y. 238; *Aultman* v. *Olson,* 34 Minn. 450; *Wolf* v. *Pugh,* 101 Ind. 305; *McGraw* v. *Germania F. Ins. Co.,* 54 Mich. 165. A cashier is the chief executive officer through whom the whole financial operations of the bank are conducted. 2 Am. & Eng. Enc. L. 118; *Merchants' Bank* v. *State Bank,* 10 Wall. 604, 650. The admissions

and declarations of the cashier in relation to matters within the scope of his ordinary duties bind the bank. 2 Am. & Eng. Enc. L. 120. *Sturgis* v. *Bank of Circleville,* 11 Ohio St. 153; *Houghton* v. *First Nat. Bank,* 26 Wis. 663. This suit is between the original parties to the note. Between such parties the consideration may be inquired into and all the facts attending the inception of the contract. 1 Dan. Neg. Inst. §§ 124, 769. On the evidence given the defendants were entitled to the judgment of the jury. By the statute the court was not authorized to give any charge at all as to the facts, much less to decide them. 2 C. L. § 3361. The appellants had a constitutional right to a trial before and verdict of a jury.

*Messrs. Thurman & Wedgewood,* also for appellants.

The rule against the admission of parol testimony to vary the terms of a written contract does not exclude evidence of an oral agreement which constitutes a condition upon which the performance of a written agreement is to depend. It is always admissible to show by parol that a document was conditioned on an event that never occurred. *Michels* v. *Olmstead,* 14 Fed. Rep. 219; *Benton* v. *Martin,* 52 N. Y. 574; *Westman* v. *Krumweid,* 15 N. W. R. 255 (Minn.); *Faunce* v. *Assurance Co.,* 101 Mass. 279; *Skaavaas* v. *Finnegan,* 16 N. W. R. 456 (Minn.); Daniels on Neg. Inst. vol. 1, § 68 (4th ed.). The evidence was relevant and should have been admitted. It needs a delivery to make the obligation of the note operative at all, and the delivery and the extent of the operation of the instrument may be limited by the conditions with which the delivery was made. The testimony offered as above stated by the defendants would have proved that there was a condition precedent to be performed before there was any delivery of the note. A note delivered

before the performance of a condition precedent is void in the hands of a holder with notice.    *Merchants' Exchange Bank* v. *Lucknow* (Minn.), 35 N. W. R. 434; *Boutella* v. *Wheaton,* 13 Pick. 499; *Small* v. *Smith,* 1 Denio, 583; *Vallette* v. *Parker,* 6 Wend. 613; *Perry* v. *Patterson,* 42 Am. Dec. 424 (Tenn.); *Campbell Printing Press & Mfg. Co.* v. *Powell,* 14 S. W. R. 245.   The note therefore came into the possession of the bank through the medium of Hague, its cashier, and is treated by the bank as its property.   The cashier of a bank is its executive officer by whom its debts are received and paid and its securities taken and transferred.    *Flecker* v. *Bank of the U. S.,* 8 Wheat. 338; *Cochecho Ntl. Bank* v. *Haskell,* 12 Am. Rep. 72; note to *Corser* v. *Paul,* 77 Am. Dec. 759.   Therefore, Hague, the cashier, acted within the scope of his authority as such cashier in receiving this note into the bank.   But if it should be contended that this rule does not apply in this case because of Hague's individual interest in the transaction, then we submit the plaintiff is nevertheless bound because it accepts the fruits of the transaction and ratified the same by bringing this suit.    *Johnson Harvester Co.* v. *Miller,* 40 N. W. R. 429 (Mich.); *Dexter* v. *Adams,* 2 Denio, 644; *Bank* v. *Town of Milford,* 36 Conn. 93.   See also authorities already cited in defendant's brief. The bank is chargeable with the knowledge of its cashier at the time it received the notes into its bank as to how the notes had been procured.    *Bank* v. *Sturtevant,* 12 Cush. 372; *Bank* v. *Cushman,* 121 Mass. 490; *Bridge Co.* v. *Bank,* 3 N. W. 156.   Nor is this rule otherwise even though the cashier, or other officer acting for the bank, participated in the act, the knowledge of which is to be charged to the bank.   We call special attention to the following cases:  *Holden* v. *Bank,* 72 N. Y. 286; *Mills* v. *Mills,* 17 N. E. R. 496; *Bank* v. *Bank,* 10 Gray, 532;

*Savings Inst.* v. *Bostwick,* 19 Hun, 354; *Bank* v. *Milford,* 36 Conn. 93.

In *Holden* v. *Bank, supra,* the court in strong language, held: That it mattered not how the knowledge is obtained by the officer of the bank, whether while acting as agent of the bank or in any other capacity; the bank is still chargeable with the knowledge; and on page 293, the court, by inference, holds that even in a case where the cashier obtained a note for his own benefit, if he should discount it as cashier of the bank of which he was cashier, the bank would be chargeable with notice as to how the note was procured.     See also: *U. S. Bank* v. *Davis,* 2 Hill, 452; *Smith* v. *Anderson,* N. Y. Supp., July 24, 1894; *Loring* v. *Brodie,* 134 Mass. 468; *Bank* v. *Howe,* 12 Am. St. Rep. 744; *Johnson Harvester Co.* v. *Miller, supra.* The evidence was admissible and should have been admitted to show that a condition precedent to the delivery of the note existed, in which case the burden of proof would have shifted upon the plaintiff to show that it obtained the note fairly, in good faith, and without knowledge of its infirmity.     *Thaddius Munroe* v. *Cooper,* 5 Pick. 412; *Cummings* v. *Thompson,* 18· Minn. 246; *Hall* v. *Thayer,* 105 Mass. 218 and cases cited; 1 Daniels on Neg. Inst., § 791; 2 Rand. on Com. Paper, § 1023.     A corporation may be in a legal sense guilty of a fraud.     As a mere legal entity it can have no will, and cannot act at all, but in its relations to the public it is represented by its officers and agents and their fraud in the corporate course of dealings is in law the fraud of the corporation.     *Cragie* v. *Hadley,* 52 Am. Rep. 9.     A bank has no title to and cannot recover upon a note which it obtains by the fraudulent acts and representations of its officers.     *Nat'l Bank* v. *Howe, supra.*     The principle of the above case is strongly affirmed by the Supreme Court of the United States in the

case of *U. S. Bank* v. *State Bank*, 96 U. S. 36, the court saying: "But surely it ought to require neither argument or authority to support the proposition, that, where the money or property of an innocent person has gone into the coffers of the nation by means of a fraud to which its agent was a party, such money or property cannot be held by the United States against the claim of the wronged and injured party. The agent was an agent for no such purpose. His doings were initiated by the underlying dishonesty and could confer no right upon his principal. A different result would be reproach to our jurisprudence." Whether Hague acted as agent for the bank was clearly a question for the jury; and to withdraw it from the jury was reversible error. *Savings Bank* v. *Chase*, 72 Me. 226.

*Mr. George Sutherland*, (*Mr. P. L. Williams* and *Mr. Waldemar Van Cott*, with him on his brief), for respondent.

[The arguments and the authoritles cited by counsel for respondent are found in the opinion of the Court. It is apparent that after counsel had exhausted his fund of argument and citation in answering the extensive brief of appellant, that a second, or supplemental brief was served upon him by other counsel. This second brief, evidently, was not "oil for the troubled waters," because counsel proceeds at once under the same cover to answer it, and the brilliant exordium is quoted below in full, as it is one of the finest outbursts of keen and piercing sarcasm, blended with subtle argument that has been our fortune to chance upon among the *dusty* records of the Territorial Supreme Court.—REP.]

"Since the foregoing was prepared, appellants have served us with a supplemental brief in which, with apparent unconsciousness of their former arguments and sometimes with quite refreshing disregard and occasional open

defiance of former contentions, they proceed to thresh their straw anew.

The two briefs are evidently not the work of the same hand; the latter manifests a lamentable but quite excusable distrust of the former. The former is strong in its open contempt for the facts of the case; the latter in its exasperating disregard of the real questions of law involved. Both are potent with suggestions of the virile and robust character of the imagination of the respective counsel who prepared them. The former brief mildly intimates that there is evidence tending to show want of consideration for the note; suggests that the supposed consideration is disclosed by Hague; apologetically states that it was merely $2,500 in cash paid by the bank for the land deeded to Paxman. The latter effusion boldly asserts that there is no evidence whatever of consideration; takes issue with the former brief and slyly insinuates that what appears to be evidence to their co-counsel is merely the fancy of a mind filled with vain delusions and foolish dreams. The former contends that the contract with Tiernan was not binding at all; that he was entitled to no land; the latter contains dark hints to the effect that appellants are still bound by the contract, and the purchase of the land by the bank has not relieved them.

These and other like disagreements are unfortunate. Not knowing whose views will ultimately prevail, we cannot accept the embarrassing alternative of deciding which is authoritative, but content ourselves with the consoling reflection that on account of the falling out among counsel we may get our dues, in consonance with a certain homely proverb which will readily occur to the court."

MERRITT, C. J.:

The respondent brought suit against the appellants and Hague and Tingey upon a promissory note for $3,000.

At the conclusion of the evidence the court below in-
structed the jury to return a verdict for the respondent
for the face of the note, without interest.    The facts in
the case, either proven or proposed to be proven, were as
follows:    In the month of January, 1890, certain citizens
and property owners of the town of Nephi, among whom
were the appellants, Foote and Bryan, and Tingey and
Hague, entered into a contract with one Francis Tiernan,
acting for the Utah, Nevada & California Railroad Com-
pany, by the terms of which, in consideration of the loca-
tion and building of a railroad to and through the town
of Nephi, the said citizens were to purchase not less than
one-half block of ground for depot purposes, within 30
days from the date of the contract, said land to be approved
by Tiernan.    About the 21st of May, 1890, the defendant
Hague, who was the cashier of the respondent's bank, and
continued to be such cashier until after the 17th day of
January, 1894, came to the appellants separately, and rep-
resented to them that he, acting for the citizens and prop-
erty owners, had procured title to a certain half block of
land known as the "Midgley Block;" that the bank had
advanced $2,500 to pay for the land, and that, if Tiernan
did not take the land pursuant to the contract, he, Hague,
would take the land and pay the bank; that the said sum
of $2,500 stood in an awkward way on the books of the
bank, and he desired to have a note payable to the bank
for bookkeeping purposes, so that the accounts could be
balanced, and he desired that the appellants and the de-
fendant Tingey should join him and George C. Whitmore,
president of the bank, in a note to the bank for that sum.
The appellants were each assured that the note would be
signed by Whitmore, and that Whitmore understood all
about the matter.    With this understanding they signed
the note to the bank on the 21st day of May, 1890, for
the sum of $2,625, being $2,500, with interest until

maturity computed and added. Whitmore never signed the note, but the same was delivered to the bank without his signature. The testimony showed that, before the execution of the note by either Foote or Bryan, the defendant Hague had signed it. It was shown that the land had been actually bought and deeded to one William Paxman, who was the first signer of the contract between the citizens and property owners of Nephi and Tiernan. At the time of the trial in the lower court, the legal title to the land was still in Paxman. Before the trial Paxman had informed the appellants that the land had been purchased and deeded to him in pursuance of this contract. It seems reasonably clear from the testimony that Paxman took the land, and still holds it, in trust for the signers of the contract with Tiernan. It was also in evidence that the money had been advanced by the bank to pay for the land. The appellants, upon like representations from Hague that Whitmore would sign with them, executed from time to time a number of renewal notes; the last being the one in suit, for $3,000, executed January 17, 1894. None of these notes were signed by Whitmore, but were each delivered to the bank without his signature. Upon these facts the following questions are presented for our decision: *First*, was the note invalid in the hands of the bank because of the representations of Hague that the note was simply intended as a matter of form, that the appellants would not be called upon to pay it? *Second*, was the note unenforceable for want of consideration? And *third*, was the note invalid in the hands of the bank because of the delivery thereof without the signature of Whitmore?

1. So far as the first proposition is concerned, it is determined in the negative upon well-settled principles. By the terms of the note the appellants agreed positively to pay the respondent a certain sum of money at a certain

time.  Hague's statements to them in effect negatived this written promise.  The rule is well settled that in an action upon a promissory note, as in all other actions upon written contracts, parol testimony cannot vary, qualify, contradict, add to, or subtract from, its written terms.  A citation of authorities upon a proposition so fundamental would seem to be useless.  3 Rand. Com. Paper, § 1931; 1 Daniel, Neg. Inst. § 80; *Bank* v. *Dunn*, 6 Pet. 51; *Davis* v. *Randall*, 115 Mass. 547; *Wright* v. *Remington*, 41 N. J. Law, 48.  "A person who is so ill advised as to execute a written contract in reliance upon the assurance that it will not be literally enforced must submit to the loss if he is deceived, and cannot ask that a principle of great moment to the community shall be made to yield for the sake of relieving him from the consequences of his indiscretion."

2. The affirmative defense of the want of consideration may also be disposed of in a very few words.  It is doubtful whether there is a sufficient plea of the want of consideration in the answer.  The note itself imports consideration.  The circumstances under which the note was given are set forth in detail, but there is no plea that there was no other or different consideration.  2 Estee, Pl. & Prac. § 3547.  Waiving the question as to whether or not there was proof of consideration moving directly to the appellants, there was no proof that there was no consideration to the other defendants, Hague and Tingey. Proof that one or more of the joint makers had signed without consideration as between themselves and the payee would not be sufficient to destroy the presumption of consideration arising from the note itself.  It must be also affirmatively shown that there was no consideration moving to either of the other joint makers.  Abb. Tr. Ev. 442; *Kinsman* v. *Birdsall*, 2 E. D. Smith, 395; 2 Rand. Com. Paper, § 447.

3. The third question is the one most argued and relied on by appellants. Their position is that the agreement between Hague and the appellants was that the note was not to become complete until signed by Whitmore; that the bank took it charged with Hague's knowledge of this agreement; that, even if respondent was not bound by Hague's representations, because of his individual interest in the transaction when the note was received, Hague's knowledge is to be imputed to it; that, even if this be not so, the note having been delivered in violation of the condition that Whitmore should sign, it devolved upon the respondent to show that it was a holder in good faith, for value, without notice of the note's infirmity. The general rule is well established that a principal is bound by the representations of his agent, made in the transaction of the principal's business, within the real or apparent scope of his authority, and that the knowledge of the agent concerning the business which he is transacting for his principal is to be imputed to his principal. There are, however, exceptions to the general rule no less well established. No person can act as an agent in regard to a contract in which he has any interest, or in which he is a party on the opposite side to his principal. 2 Daniel, Neg. Inst. § 1611; Story, Ag. § 210; *Claflin* v. *Bank,* 25 N. Y. 293; *Voltz* v. *Blackmar,* 64 N. Y. 440; *West St. Louis Sav. Bank* v. *Shawnee Co. Bank,* 95 U. S. 557. In the case at bar, Hague, although cashier of the respondent bank, and empowered to represent it, and speak for it generally in such transactions, was himself a party to the note on the side opposite to respondent. If it should be held that he represented and spoke for the bank in that transaction, as its agent, he would be permitted to occupy exactly that adverse and inconsistent relation which the law forbids. He had no power or authority to act or speak for the respondent in that matter. He stood upon one

side, with his comakers, the appellants, and the bank stood upon the other side. They dealt with each other, not as principal and agent, but as payor and payee, representing adverse interests, and occupying adverse positions. In such a case the representations of Hague to his comakers were not binding on the bank, and his knowledge of such representations could not be imputed to the bank without violating rules of law well settled both upon principle and authority. *Innerarity* v. *Bank,* 139 Mass. 334, 1 N. E. 282; Mechem, Ag. §§ 723, 729; *Frenkel* v. *Hudson* (Ala.) 2 South. 758; *Wickersham* v. *Zinc Co.,* 26 Am. Rep. 786.

The case of *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 17 N. E. 496, was referred to and much relied on by appellants. The facts of that case clearly distinguish it from the case at bar. It announces the doctrine that an agent's knowledge of his own fraud is to be imputed to the principal in a transaction where the agent alone represents the principal. This is a distinction which seems to us less substantial than technical, and we cannot give it our assent. The rule of law which imputes the knowledge of an agent to his principal, according to most of the authorities, is based upon the presumption that the agent will communicate to his principal whatever he knows concerning the business he is transacting, and the exceptions to the rule upon the contrary presumption, that the agent will not communicate to his principal his knowledge of his own independent frauds, committed in the course of transacting the principal's business, and that he will not communicate to his principal his knowledge in a transaction where he is interested upon the opposite side. In a case where the presumption arises that an agent will not communicate his knowledge to his principal, or to another acting for the principal, it would seem to be unreasonable to hold the principal responsible for the knowledge of the agent solely

because the agent in the particular transaction appeared himself for the principal. The presumption would naturally be, in such a case, that he would fail to act upon such knowledge as the principal would act, just as he would fail to impart his knowledge in a case where another appeared for the principal. It is contended, however, that Hague's representations to appellants that Whitmore would sign the note before it should become complete were ratified by accepting the fruits and bringing suit on the note. It is clearly not a case for the application of the law of ratification. As already shown, Hague was forbidden to act as the agent of the bank in this particular transaction. The respondent, by taking the note, apparently complete upon its face, for which it had parted with full value, without knowledge of the condition that it was to be signed by Whitmore, did not thereby ratify the representations of one maker to his comakers, nor become responsible therefor. *Nichols* v. *Bruns* (Dak.) 37 N. W. 752, and authorities cited; *Wheeler* v. *Sleigh Co.,* 39 Fed. 347; Mechem, Ag. §§ 148, 149. The note having been received by the bank without knowledge of the condition, the appellants were bound. 1 Daniel, Neg. Inst. § 854; *Jordan* v. *Jordan*, 43 Am. Rep. 294, and cases cited.

The evidence shows that the respondent was a *bona fide* holder for value, in due course. While there is some conflict, the rule seems to be established by the great weight of authority that it is only necessary for the holder of a negotiable instrument tainted with fraud to show that the note was transferred to him for value before maturity. A presumption then arises that it was acquired in good faith, without notice of the fraud, because it is not likely that he would give full value for a note which he believed to be fraudulent, taking the hazard upon himself, and because it would be difficult to prove good faith in any

better way. 1 Daniel, Neg. Inst. § 819, and cases cited. The respondent brought itself clearly within these requirements, and, having done so, it devolved upon the defendants to prove actual knowledge of the condition constituting the infirmity of the note, and this they did not do.

There is an additional reason why the appellants should be bound under the circumstances of this case. They knew when they signed the note that Hague was a comaker upon it, that he was jointly liable with them for the full amount. They were bound to know that an agent could not properly act for his principal and himself in such a case, and it was their duty to ascertain for themselves whether or not the representations which he made to them were authorized by the respondent. Mechem, Ag. § 290; *Hurley* v. *Watson* (Mich.), 36 N. W. 726; *West St. Louis Sav. Bank* v. *Shawnee Co. Bank*, 95 U. S. 557; *Farrington* v. *Railway Co.*, 150 Mass. 406, 23 N. E. 109; *Anderson* v. *Kissam*, 35 Fed. 706. As was said by the supreme court of the United States in the case of *West St. Louis Sav. Bank* v. *Shawnee Co. Bank, supra,* the very form of the paper itself carried notice of a possible want of power to make the representations; and, if the appellants failed to avail themselves of this notice, and obtain the information thus suggested, it is their own fault, and, as against an innocent party, they must bear the loss. The judgment of the lower court is therefore affirmed, with costs to respondent.

BARTCH, J., concurs.