## EVONA INV. CO. v. BRUMMITT et al.

No. 4228.    Decided September 8, 1925.    (240 P. 1105).

1. JOINT ADVENTURES—REJECTING PROFFERED EVIDENCE THAT NOTE WAS NOT GIVEN FOR MONEYS TO BE USED IN JOINT ENTERPRISE HELD ERRONEOUS. In view of allegation that note was given for joint use of defendants and for moneys to be used in alleged joint enterprise, and of testimony of one defendant that note was in renewal of note to bank for moneys so used, it was error to reject other defendant's evidence that note was for first defendant's personal obligations, and was in renewal of his notes.

2. APPEAL AND ERROR—FINDINGS UNSUPPORTED BY EVIDENCE DISREGARDED. Findings unsupported by evidence must be disregarded.

3. PRINCIPAL AND AGENT—KNOWLEDGE OF AGENT OF WHAT INTEREST DEFENDANT HAD IN CONTRACT HELD TO BE KNOWLEDGE OF PRINCI-

Appeal from Second District

PAL; RATIFIED CONTRACT BOUND PRINCIPAL. Where agent alone acted for principal in making loan to defendant, taking assignment from latter of contract to purchase lots, agent's knowledge of defendant's interest in and to contract was knowledge of principal, and transaction, having been adopted by principal, was binding on it, and agent's actions in relation thereto, within scope of and course of his employment, constituted acts and knowledge of principal.[1]

4. ESTOPPEL—DEFENSE OF ESTOPPEL MUST BE PLEADED. Estoppel to be available as a defense must be pleaded.

5. CORPORATIONS—CORPORATION HELD NOT ESTOPPED FROM ASSERTING INTEREST IN CONTRACT FOR PURCHASE OF LOTS. Fact that while H., as agent and sole representative of plaintiff, and while representing it, made loan to defendant, and also, being president of H. Co., silently stood by without objection, and accepted on behalf of plaintiff assignment from defendant to plaintiff of whole contract for purchase of lots, as though defendant were sole owner thereof, *held* not to estop H. Co. from asserting interest in contract, where H. did not act for or represent it, and it derived no benefit therefrom.

6. VENDOR AND PURCHASER—SUBORDINATING INTEREST OF DEFENDANT COMPANY TO THAT OF PLAINTIFF HELD ERRONEOUS. Where defendant H. Co., with other defendant, had undivided one-half interest in contract to purchase lots, which at time of assignment to plaintiff had named sum due thereon, and thereafter H. Co. secured loan, to prevent forfeiture of contract secured by mortgage, and plaintiff paid nothing to protect contract, and claimed no interest in it until after H. Co. paid principal and interest due on contract and all taxes, subordinating H. Co.'s interest in property to that of plaintiff *held* erroneous.

Appeal from District Court, Second District, Weber County; *J. N. Kimball*, Judge.

---

[1] *Victor G. & S. Mining Co.* v. *National Bank of the Republic*, 15 Utah, 391, 49 P. 826; *Central Bank* v. *Stephens*, 58 Utah, 358, 199 P. 1018.

Corpus Juris-Cyc. References.

[1]    Joint Adventures 33 C. J. p. 874 n. 77 New.
[2]    Appeal and Error 4 C. J. p. 677 n. 6 New.
[3]    Agency 2 C. J. p. 521 n. 77; p. 859 n. 78.
[4]    Estoppel 21 C. J. p. 1242 n. 92.
[5]    Corporations 14a C. J. p. 370 n. 47.
[6]    Vendor and Purchaser 39 Cyc. p. 1672 n. 91.

Action by the Evona Investment Company against J. J. Brummitt and others. Judgment for plaintiff, and defendant Ralph E. Hoag Company appeals.

AFFIRMED in part, REVERSED in part, and REMANDED, with directions.

*C. R. Hollingsworth* and *Joseph Evans,* both of Ogden, for appellant.

*Cheney, Jensen, Martineau & Stephens,* of Salt Lake City, for respondent.

*N. J. Harris,* of Ogden, for defendant Brummitt.

*Henderson & Johnson,* of Ogden, for defendant Parker.

STRAUP, J.

The plaintiff, Evona Investment Company, brought this action to recover on a promissory note executed and delivered by the defendant Brummitt to the plaintiff in the sum of $3,383.50, with interest at 8 per cent. per annum from December 14, 1916. Plaintiff alleged that in March, 1910, Brummitt entered into a written contract with one Stilwell to purchase from him approximately 421 lots in Ogden, and while the contract was in the name of Brummitt alone as the purchaser, it nevertheless was entered into upon an agreement between Ralph E. Hoag and Brummitt that Hoag was to furnish the moneys or make available the credit or funds to finance the deal, which, as alleged, was a joint adventure between Hoag and Brummitt that in January, 1912, the Ralph E. Hoag Company, a corporation, was organized or caused to be organized by Hoag for the purpose of taking over and carrying on his personal business and affairs, and that after its incorporation it, with Brummitt, carried on the venture, which, as alleged, then became the joint adventure of Brummitt and the Hoag Company; that additional funds were needed by Brummitt and the Hoag Company in con-

nection with the transaction, and that Hoag, as agent of the plaintiff, and who then was its secretary and executive agent, and had charge of its books and records, and conducted its business of loaning moneys on real estate security, "loaned to said joint adventure" on the 14th day of December, 1916, the sum of $3,383.50, whereupon Brummitt executed and delivered to plaintiff his promissory note, the note sued on, and to secure its payment made an assignment to plaintiff of the contract with Stilwell as follows:

"I hereby certify that, under date of March 1, 1910, I purchased by contract from O. J. Stilwell four hundred twenty-one (421) lots in Nob Hill addition and Nob Hill Annex addition to Ogden City, Utah, on which contract I have paid and expended to date over $6,000. I hereby assign, transfer, and set over to Evona Investment Company all my rights and interest in the above-described contract, for the purpose of securing to said Evona Investment Company the payment of one certain promissory note executed by me this date for $3,383.50, in favor of said Evona Investment Company, together with interest accruing thereon, and also to secure any other indebtedness now existing or hereinafter incurred by me to said Evona Investment Company, or the holder of the above-described note."

The note and assignment were signed and made alone by Brummitt. Plaintiff further alleged that, when the note and assignment were made, it was not advised of the interest of the defendant Hoag Company in the contract, and "was not independently advised of that interest until long after." On information and belief, plaintiff alleged that the moneys loaned and obtained on the note were used for the benefit of the joint adventure; that Hoag died in June, 1917, and thereafter, in February, 1918, the Hoag Company paid to W. H. Meal, to whom Stilwell had transferred and assigned his interest in the contract, all that remained due on it, and took a deed of conveyance from Meal to it, and that the Hoag Company then executed and delivered a mortgage on the property to the defendant Parker in the sum of $6,000 for moneys borrowed from Parker and with which the Hoag Company paid to Meal the balance remaining due on the contract, but that both Parker and the Hoag Company then had knowledge and notice of the assignment made by Brum-

mitt to the plaintiff, and that such mortgage was made to
Parker by the Hoag Company to deprive the plaintiff of its
lien and interest in and to the contract and the property.
Plaintiff thus prayed that it be given judgment against both
Brummitt and the Hoag Company for the full amount of the
note, with interest and attorney's fees, an equitable lien on
the real estate, a foreclosure of it, and a sale of the property,
and that the proceeds thereof be applied first on its lien
over and above all claims of the defendants and each of them.

The Hoag Company answered, admitting it had an un-
divided one-half interest in the contract between Brummitt
and Stilwell, and that the Hoag Company was incorporated
in January, 1912, but denied that it was incorporated to take
over or carry on the personal business or affairs of Hoag, de-
nied that the Brummitt note was given to plaintiff for the
use or benefit of the so-called joint adventure, and denied all
other material allegations of the complaint. It averred that
both Brummitt and the Hoag Company were in default in
paying the moneys due on the contract, and that Meal, to
whom the contract was assigned by Stilwell, had declared a
forfeiture of the contract and of all moneys paid thereon, and
that the Hoag Company thereafter purchased the property
from Meal, paying him the balance due on the contract, in-
cluding interest and taxes, and taking a deed of conveyance
of the property from Meal to it, and to raise money for such
purpose the Hoag Company borrowed $6,000 from Parker,
and gave him a mortgage on the property to secure the pay-
ment of the loan. Since the Hoag Company is the only ap-
pellant, it is unnecessary to state the pleadings of the other
defendants.

The case was tried to the court, who found the issues sub-
stantially as alleged in the complaint, but did not find that
the Brummitt note was given for the joint use or benefit of
Brummitt and the Hoag Company, or that the consideration
of the note went in the joint adventure, and in effect found
that the note was the personal note and obligation of Brum-
mitt, and as it on its face appears to be. The court also
found that, when the note was given, Hoag was the secretary
and executive agent of the plaintiff, and acted for it in the

making of the loan; that Hoag then also was the president
of the Hoag Company, and Parker a director thereof, when
he made his loan to the Hoag Company, and was a personal
and intimate friend of Hoag, and that both the Hoag Com-
pany and Parker, when the mortgage was executed and de-
livered to Parker by the Hoag Company had knowledge and
notice of the assignment made by Brummitt to plaintiff. But
in such respect the court further found:

"That at the time said Parker made said loan to the Ralph E.
Hoag Company, and at the time payment thereof was made to said
Meal, the same was made in good faith, to prevent a forfeiture of
said contract, between Stilwell and Brummitt, and, if said loan had
not been made and said payment made, the plaintiff herein would
have lost its lien upon the property herein described."

The court also found that the Hoag Company had paid the
Parker loan, except the sum of $2,686.08, which was past due
and unpaid; that prior to the Parker loan and subsequent
thereto Hoag and the Hoag Company paid out "substantial
amounts" on the contract and on account of taxes and spe-
cial assessments for the protection of the property; but the
court did not find the amount of moneys so paid by Hoag or
the Hoag Company. The Hoag Company averred that it
and Hoag paid out for such purposes approximately $13,000.
By its decree the court adjudged there was due and unpaid
to plaintiff on its note including interest the sum of $6,102.18,
and rendered judgment therefor against Brummitt alone,
but not against the Hoag Company; that there was due
Parker on his loan, including interest, the sum of $2,974.90;
gave the plaintiff a lien on the property for the amount due
on its note; ordered the property sold and out of the proceeds
of sale decreed that the amount due Parker be first paid, then
the amount due plaintiff, and, if any surplus remained, that
it be paid to the Hoag Company.

The Hoag Company appeals. It complains of a ruling of
the court excluding certain evidence offered by it, of por-
tions of the findings, conclusions, and the decree, especially
awarding the proceeds of sale of the property to the plaintiff
before repaying appellant any of the moneys it had advanced
and paid on the contract and for taxes and assessments on

the property. The appellant also contends that Meal had declared a forfeiture of the contract, and that after such forfeiture the Hoag Company purchased the property from Meal and obtained from him a deed of conveyance of the property, and that it thereby became the owner of it.

The plaintiff called Brummitt as a witness. He testified that he and Hoag together entered into the deal with Stilwell; that his agreement with Hoag was that Hoag was to supply the money or credit to finance and carry out the enterprise and to have 8 per cent. interest on all moneys advanced by him; that Brummitt was to look after the sale of the lots and have 5 per cent. commission; and that when the property was sold, and Hoag reimbursed for all moneys paid by him, with interest, and Brummitt allowed 5 per cent. commission, the proceeds remaining were to be divided equally between them. He further testified that, after the Hoag Company was organized, Hoag told him that the ''deal'' would be carried on by the Hoag Company; that he received no moneys for the note given by him to the plaintiff, the note sued on, but that it was given by him to take up a note amounting to about $3,100 which he owed at the Utah National Bank at Ogden, and of which Hoag was the cashier, which note was given for money used in the joint enterprise; that while he gave personal checks in payment of some of the payments on the real estate contract, and for taxes on the property, still the moneys so drawn on by his checks were furnished by Hoag or the Hoag Company.

While the effect of his testimony was that the note at the bank was given by him for moneys which were used in the joint enterprise, still his testimony did not show that the note was so intended, or that it in fact was a joint obligation of himself and the Hoag Company, or that it was anything more than his mere personal obligation. However, when the Hoag Company was putting in its evidence, it called witnesses and caused the bank records to be produced, and offered to prove that the note given by Brummitt to the plaintiff was not given for any moneys used in the enterprise, and that the note, which Brummitt owed the bank and for which he testified the plaintiff's note was given, was likewise merely

the personal obligation of Brummitt, and was itself a renewal note of prior notes which Brummitt owed the bank, all given in respect of Brummitt's mere personal obligations at the bank, and not for the use or benefit of the joint adventure.

The court sustained plaintiff's objections to such proffered evidence upon the ground that it was immaterial; the court holding that it was immaterial whether the consideration for which the Brummitt note was given went in the enterprise or not, that it was wholly immaterial what Brummitt did with the moneys for which the plaintiff's note was given, and wholly immaterial whether it or the note owed by him at the bank was or was not given for the use or benefit of the joint adventure, or whether any part of the moneys derived from such notes or either of them went in the enterprise or not. On further argument the court also, in that connection, observed that the contract between Stilwell and Brummitt for the purchase of the lots was in the name of Brummitt; that Hoag was the secretary and manager of the plaintiff, and that in making the loan to Brummitt Hoag acted for the plaintiff, and loaned Brummitt $3,383.50 upon the assignment to plaintiff of the contract, and hence, as between the parties, the plaintiff became the owner of the whole contract, "because there is no evidence in this case so far that the Evona Investment Company ever had any notice but what Brummitt was the (sole) owner of that contract"; that "Hoag couldn't deal with himself and the Investment Company, and the company be charged with notice of anything he had notice of"; and, Hoag being the president of the Hoag Company, it was estopped as against the plaintiff from asserting it had any interest in the contract.

In view of the allegations in the complaint that plaintiff's note was given for the joint use of Brummitt and the Hoag Company, and was given for moneys to be used and which were used in the enterprise, and upon such theory claimed an equitable lien, and in view of the testimony of Brummitt that plaintiff's note was given as a renewal of a note which he owed at the bank, the funds of which went in the enterprise, which was all denied by the Hoag Company in its answer, we think the court erred in

rejecting the proffered evidence. When it first ruled on the matter, the court observed that:

"So far as the testimony now shows, Brummitt borrowed of the Evona Investment Company the amount specified in his note that is in suit here. If he did, then the Evona Investment Company is entitled to a substitution of itself for Brummitt in that contract, and all right that Brummitt had passed to the Evona Company, so that it didn't make any difference whether Brummitt paid that money on the purchase price of this property or whether he threw it in the fire."

If, as stated by the court, the plaintiff was entitled to a substitution of itself for Brummitt in the contract, then clearly the court erred in the ruling. But the court seemingly also based its ruling on the theory of an estoppel. But the plaintiff, neither in its complaint nor in its reply, pleaded an estoppel. The theory of its complaint, and upon which the plaintiff presented its case, was that the moneys obtained from the note given plaintiff went in the joint enterprise, and that the note was given for such purpose, and hence the plaintiff had an equitable lien upon the property. But even on the theory of an estoppel, as sua sponte invoked by the court, the appellant nevertheless was entitled to the proffered evidence.

Had it been true, as stated by the court, that no evidence had yet been adduced that the plaintiff had knowledge or notice of appellant's interest in the contract, such afforded no just ground excluding the proffered evidence; the appellant being entitled to show, if it could, that the plaintiff had such knowledge or notice, and, as will presently be seen, plaintiff had notice. Further, the proffered evidence was competent and relevant, as bearing upon a material issue presented by the complaint; and, since it was material for such purpose, it ought to have been received, though the court regarded it as irrelevant to something else, especially a matter apparently invoked on the court's own motion. Since the court did not find that plaintiff's note was given, as alleged in the complaint, to raise funds for the joint enterprise, and in effect that it was merely Brummitt's personal obligation, and on the note rendered judgment alone against Brummitt, and not against the appellant, it is doubtful

whether the ruling excluding the evidence, though erroneous, was prejudicial. Because of the further views taken by us of the case, a holding whether such ruling was or was not prejudicial is unnecessary.

The contract between Brummitt and Stilwell was entered into in March, 1910. Though it was in the name of Brummitt alone as the purchaser, still it is indisputably shown by the record that Hoag had an undivided one-half interest in the contract, he to furnish the moneys with which to carry out the contract, and Brummitt to sell the lots, and, when sold, Hoag was to be reimbursed, with interest, and the profits of the enterprise divided equally between them, and that the Hoag Company succeeded to Hoag's interest. In recognition of such interest Brummitt, in September, 1910, in writing, assigned an undivided one-half interest in and to the contract to Hoag. The court so found, and such finding is in accord with the undisputed evidence.

The real estate contract, among other things, provided that Stilwell agreed to sell and Brummitt to buy the lots, fully described in the contract, for a consideration in the sum of $8,420, $1,000 of which was paid upon the execution and delivery of the contract, and $1,000 to be paid each and every year thereafter until the full amount was paid, together with interest on the deferred payments at the rate of 8 per cent. per annum, payable quarterly. It further provided that in case of a failure or neglect to make the payments as specified in the contract, or any installment thereof, or of any of the interest thereon, or to pay the taxes and assessments levied against the property when the same became due, the contract terminated and was void, and all payments made thereon forfeited as liquidated damages. The contract was by Stilwell transferred and assigned to W. H. Meal, in December, 1910, who then became the owner and holder thereof. There then was a balance due and unpaid on the contract in the sum of $6,074.60.

The Hoag Company was incorporated in January, 1912. Hoag became president of the company, and held such office until he died in June, 1917. It was not shown for what purpose the company was organized, nor what was its capital

stock, nor who its officers or shareholders were, except that Hoag was president and Parker a director of the company. Parker holding one share, but what shares were held by Hoag or what interest he held in the company was not shown. It was shown and found that Parker was a personal and intimate friend of Hoag, and after Hoag's death advised Mrs. Hoag, who became president of the company. But the court found that the Hoag Company was organized to take over and carry on the business and personal affairs of Hoag, and that Hoag owned, managed, controlled, and dominated the company. There is no evidence to support such finding, and hence it must be and is disregarded. On December 14, 1916, Brummitt gave his note to the plaintiff. The transaction with respect thereto and on behalf of the plaintiff was conducted and negotiated by Hoag as its agent. In such particular it is alleged in the complaint, and admitted by the appellant in its answer, that Hoag at the time and until his death was the secretary and executive agent of the plaintiff, and had charge of its books and records, and conducted its business of loaning moneys on real estate securities, and the court so found. It further was shown that the plaintiff was a New Jersey corporation, doing business in the state of Utah and maintaining offices at Ogden, and that Hoag until his death was the only agent or representative the plaintiff had in the state, and the only person who therein conducted and carried on its business.

If by the statement in the assignment by Brummitt to the plaintiff, ''I have paid and expended, to date, over $6,000,'' is meant that Brummitt himself paid and expended such amount of money on the contract, then such statement is not true; for by the great and manifest weight of the evidence, if not by all of the evidence, it is shown that all the moneys, except the initial payment, which was paid, not in money, but in connection with another real estate deal, were paid either by Hoag or the Hoag Company, and that what, if any, payments by check or otherwise were made by Brummitt were with moneys and funds furnished by Hoag or the Hoag Company. And it indisputably is shown that, when the assignment was made by Brummitt to the plaintiff, there

was then a balance due and unpaid on the contract in the sum of $6,074.60, and that all the payments made on the contract from the time it was assigned in 1910 to Meal, to the time of the assignment by Brummitt to the plaintiff, were but interest payments and some taxes, all paid either by Hoag or the Hoag Company.

The matter thus stood until in February, 1918, when Meal made repeated demands for payment of the amounts due on the contract, and, as the court, found, threatened to forfeit the contract unless the payments were made, but had not actually declared a forfeiture. There then was due and unpaid on the contract $6,074.60 principal, $202.45 interest, and taxes paid by Meal, amounting to $266.58, or a total of $6,543.63. Thus, to prevent a forfeiture and to protect the property, as found by the court, the Hoag Company borrowed $6,000 from Parker, and with such moneys and a note given by it to Meal in the sum of $543.63 paid off the contract and took a deed of conveyance of the property from Meal, and to secure Parker for the loan made by him the Hoag Company gave him a mortgage on the property in the sum of $6,000. It paid the note to Meal in full, and the principal and interest of the note given Parker, except the sum of $2,686. All told, the appellant paid on the contract, principal and interest and taxes and assessments on the property, about the sum of $9,309, not including what it still owed Parker on its note. There was no evidence to show what, if any, moneys Brummitt paid on the contract, except the initial payment, which was not cash, but some sort of an exchange of real property. Whether Hoag was interested with Brummitt in that is not shown. No issue, by pleadings or otherwise, was presented as to an accounting between Brummitt and Hoag or the Hoag Company.

The claim made by appellant that Meal had declared a forfeiture of the contract, and after such forfeiture had offered the property for sale, and that the appellant, purchasing it from Meal by paying him the balance due and unpaid on the contract, including the taxes paid by Meal, and taking from him a deed of conveyance, thereby became a direct and independent purchaser of the property and the

owner of it, stripped from whatever interest the plaintiff or Brummitt had in and to the contract or property, is not tenable. The finding which the court made that such payments were made to Meal in good faith on the contract, and to protect it and the property, is approved by us. In such view the case is now further considered.

The court having found that the money was loaned by Parker to the Hoag Company, and by it paid to Meal in good faith to protect the contract and the property, and notwithstanding Parker, as well as the Hoag Company, had notice of the assignment by Brummitt to the plaintiff, the conclusions and the decree would seem to be rather inconsistent, by awarding Parker a lien paramount to the rights of the plaintiff, but subordinating the rights of the Hoag Company to those of the plaintiff. The decree in such particular is defended by the respondent on the theory that the assignment made by Brummitt to the plaintiff was an assignment of the whole contract, and by Brummitt as the sole purchaser, without knowledge or notice to the plaintiff that Hoag, or the Hoag Company, had any interest in the contract, and that the knowledge of Hoag of such interest was not imputable to plaintiff, and that the Hoag Company is estopped as against the plaintiff from asserting or claiming any right, title, or interest in the contract or property. It is not averred, nor is it claimed, that Hoag, in making the loan on behalf of the plaintiff to Brummitt, acted in bad faith, or was guilty of any fraud or misfeasance, or even acted negligently or improvidently. The bona fides of the transaction is not questioned. While it is alleged that Parker made his loan to the Hoag Company to deprive the plaintiff of its lien and rights in and to the premises, yet the court found against such charge, and found that the loan was made and the money paid in good faith to protect the contract; and while the court found, and the evidence shows, that Hoag was the president of the Hoag Company, it also found that he was the secretary and executive agent of the plaintiff, and as such acted as its agent in making the loan to Brummitt, and, though it found that the plaintiff had no notice that any one other than Brummitt had an interest in the contract, still

the court nowhere found that in such transaction or negotiations Hoag acted adversely to the plaintiff, or that he or the Hoag Company was in any particular interested or concerned in or benefited by the loan.

By the granting clause of the assignment Brummitt assigned, transferred, and set over to the plaintiff all the "rights and interest" which Brummitt had in the contract. Brummitt and Hoag, of course, both knew what that interest was, and that it was only an undivided one-half interest in and to the net profits of the enterprise when the lots were sold. Other than as is inferred from the assignment itself, it is not averred, found, or claimed that Brummitt or Hoag or any one represented to the plaintiff or to any one that Brummitt as the purchaser was the sole owner of the contract. Since Hoag and Brummitt knew just what Brummitt's interest in and to the contract was, it may well be assumed that by the assignment Brummitt intended to assign and transfer all that he had, he could do no more, and that the parties Hoag and Brummitt, negotiating the transaction, understood the assignment to mean that and nothing more. Further, since it is not found, and there is no evidence to show, that in the transaction Hoag, though the president of the Hoag Company, in any particular acted for or on behalf of that company, or that he or the Hoag Company was interested or concerned in the transaction, or derived any benefit from it, it is difficult to see why the Hoag Company should be bound or estopped by anything Hoag did or said or knew in furtherance of such negotiations.

While it is alleged that the loan was made for and to be used in the joint enterprise, still the court did not so find. Not only was it averred, and admitted by the appellant, and so found by the court, that Hoag was the secretary and executive agent of the plaintiff, and had charge of its books and records and conducted its business of loaning moneys on real estate securities, but it also indisputably was shown that Hoag was the only agent or representative of the plaintiff in the state, and that he alone, for and on behalf of the plaintiff, made the loan and acted for it in the transaction. Under such circumstances, Hoag alone having acted for the plain-

tiff, his knowledge of just what interest Brummitt had in and to the contract was the knowledge of the plaintiff, and, the transaction having been adopted by it, the whole of it is binding on it, and what in such respect Hoag did or knew relating to the matters and things connected with the transaction, and then being conducted by him within the scope and in the course of his employment for and on behalf of the plaintiff, constituted the acts and knowledge of the plaintiff. The case does not come within the rule relied on by the respondent, and the cases cited by it in support thereof, that where an agent is engaged in doing an independent fraudulent act or transaction not in the course of his employment, and wherein he is dealing with his principal as a party on the one side and himself as the other party, or otherwise adversely and in conflict with the interests of his principal, knowledge of or notice to the agent is not imputable to his principal. For such reason the cited case of *First Nat. Bank* v. *Foote,* 12 Utah, 157, 42 P. 205, is not here applicable. There the agent, the cashier of the bank, himself with others, signed the note, and himself was a maker thereof and directly interested therein, which interest was in conflict with and adverse to the interest of the bank as his principal. Here neither Hoag nor the Hoag Company signed the note, nor, so far as found by the court or shown by the evidence, was either interested or concerned in the note or derived any benefit from it.

For other reasons it is apparent that the cited case of *Victor G. & S. Min. Co.* v. *National Bank of the Republic,* 15 Utah, 391, 49 P. 826, is not applicable. There the property of the mining company was sold on execution against it. Clawson purchased it at the execution sale. Groesbeck, the president of the mining company, advanced its money to Clawson to pay the purchase price, with a secret understanding that Clawson was to hold the property in trust for Groesbeck himself. The property was thereafter sold on another execution on a judgment by other creditors, and was purchased by Knox, the president of the bank. The bank, in virtue of a judgment against Groesbeck, redeemed from the sale to Knox. No redemption having been made from the

first sale, a sheriff's deed was given the bank. The mining company offered to redeem from the second sale. The bank resisted it, and asserted the validity of the first sale. The holding was that Groesbeck, as president of the mining company, could not bind it by consenting to the sale of the property to Clawson, and the property to be secretly held by him in trust for Groesbeck. Certainly not; and especially not when the purchase by Clawson was made with moneys of the mining company itself. Further, the mining company did not adopt the transaction and negotiations of Groesbeck. It asserted they were fraudulent and repudiated them. The distinction of a principal repudiating an act or transaction of its agent, and of adopting it and seeking the fruits of it, may be and often times is controlling, yet in this class of cases is often confused. Zane on Banks and Banking, § 112.

Neither is the cited case of *American Nat. Bank* v. *Miller*, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310, relevant to the matters in hand. There Plant, of Macon, Ga., kept a deposit account with the American National Bank at Nashville, and on May 16, 1904, was indebted to it in the sum of $50,000. He was regarded as wealthy, but in fact was insolvent. On May 13, 1904, while insolvent, he gave the First National Bank of Macon, of which he was president, a check for $3,000 on account of an indebtedness due by him to it. The Macon bank at once mailed the check to the Nashville bank, with instructions to place it to the credit of the Macon bank. The Nashville bank did so, and so notified the Macon bank. Within a few hours after the Nashville bank received the check, a petition in bankruptcy was filed against Plant. His failure precipitated a run on the Macon bank, and on the same day a receiver was appointed for it. The Nashville bank knew nothing of the proceedings in bankruptcy or of the appointment of a receiver until four or five days later, when it charged off the $3,000, claiming that Plant's insolvency gave the Nashville bank the right of set-off, even as against unmatured drafts. Miller, the appointed agent of the Macon bank, brought suit against the Nashville bank to recover the $3,000, and prevailed. The Nashville bank, among other things, defended on the ground that Plant's

knowledge of his insolvency was imputed to the Macon bank. The court properly held against the contention. Plant, in giving his check to the Macon bank on account of an indebtedness due by him to it, in no way acted for the bank. Though he was the president of the bank, the transaction in no way involved or pertained to the agency existing between him and the bank, nor did it in any particular relate to Plant's employment, or to the course or scope of it. The transaction was as separate and independent as though a mere stranger had given his check to the bank on account of an indebtedness due by him to the bank. Hence Plant's knowledge of his insolvency was no more imputable to the bank than would be similar knowledge of a mere stranger.

The case in hand falls within the rule stated by the California court in the case of *National Bank* v. *Whitney,* 40 Cal. App. 276, 180 P. 845, wherein the court said:

"Many cases are cited to support the proposition that, when an agent receives notice, it is not imputed to the principal, if the agent is engaged in committing an independent fraudulent act upon his own account. The contention is that the bank was not chargeable with any notice of the limited purpose to which the proceeds of the note could rightfully be applied for the reason that the knowledge of its cashier Roberts on that matter was acquired by him in furtherance of his own fraudulent plan to rob the bank. The rule contended for is subject to this well-established exception: Where the agent is the sole representative of the principal in the transaction, and does not deal with the principal, or with any other agent acting for him, the general law of agency is still applicable, and the knowledge of the agent is imputed to the principal. In such a case it makes no difference that the agent has an opposing personal interest, or is engaged in a personal fraud against his principal. This exception to the rule is clearly recognized in the cases of *McKenney* v. *Ellsworth,* 165 Cal. 326, 329, 132 P. 75, and *Williams* v. *Hasshagen,* 166 Cal. 386, 393, 137 P. 9. The cases from other jurisdictions are collated, and the two rules contended for by the opposing parties to this action are distinguished, in a note in 2 L. R. A. (N. S.) 993. See, also, Mechem on Agency (2d Ed.) § 1825."

This rule was recognized and applied by this court in the case of *Central Bank* v. *Stephens,* 58 Utah, 358, 199 P. 1018. Mr. Justice Frick, speaking for the court, observed that Kelly, the cashier of the bank, his principal, conducted all of the bank's business affairs; that he was in no way related to

the note, that it was payable to the bank, and that he took it for the bank, and must be deemed to have acted for it in the transaction, and hence his knowledge was imputable to the bank. But further said the court:

"If it be assumed, however, that Kelly, in taking the note and in entering into the agreement with the defendant acted for himself alone, and was without authority to bind the bank, as contended for by appellant, then what follows? The appellant, in seeking to recover upon the note against defendant, necessarily stands in the shoes of the Citizens' State Bank. All defenses that could successfully be made against the Citizens' State Bank can as successfully be made against appellant. If, therefore, the Citizens' State Bank were here suing, it could not in one breath be heard to say that Kelly is without authority to bind it as its agent, and in the next breath insist that it nevertheless can avail itself of his act in taking the note. It could not avail itself of only so much of the transaction as was beneficial to it, and repudiate all the rest. If it relies upon the note, it must take it precisely as Kelly took it, namely, with the conditional agreement under which it was taken. It must either do that or not take it at all. The law is well settled that, in case a principal seeks to recover upon a contract in which the agent exceeded his authority, he must take the contract as a whole."

The views herein are supported by the cases and authorities referred to in *Central Bank* v. *Stephens,* and among others by the following additional authorites: *Le Duc* v. *Moore,* 111 N. C. 516, 15 S. E. 888; *26th Ward Bank* v. *Stearns,* 148 N. Y. 515, 42 N. E. 1050; *Atlantic Cotton Mills* v. *Indian C. M.,* 147 Mass. 268, 17 N. E. 503, 9 Am. St. Rep. 698; *Brown* v. *Miller,* 22 Idaho, 307, 125 P. 981; *State Bank* v. *Thornberry,* 226 F. 611, 141 C. C. A. 367; *First Nat. Bank of Blaine* v. *Blake* (C. C.) 60 F. 78; Zane on Banking, § 112. The rule in notes to 2 L. R. A. (N. S.) 993, is stated to be the weight of authority.

The conclusion here reached is in harmony with the rule stated by this court in the case of *Western Securities Co.* v. *Silver King, etc., Co.,* 57 Utah, 88, 192 P. 664. When knowledge of or notice to an agent is imputable to his principal is there, particularly in respect of a director,          3 considered at some length, and the cases and authorities reviewed. The test there, as here, applied and adopted,

is largely dependent upon the factor of whether the agent in the transaction dealt with the principal on his own behalf, or for a firm or corporation of which he was a member, or whether he was acting solely for his principal, or as the sole agent, partly for the principal and partly for his own interest of others. In the former case the knowledge or notice is not imputed, but in the latter cases it is. On the stated facts in the case of Western Securities Co., it was held not imputed. The facts here are different; hence the result is different.

The claim that, as against the plaintiff, the Hoag Company is estopped from asserting any interest in the contract, is likewise untenable. No such, or any, estoppel was pleaded. As is seen, the plaintiff predicated its right to an equitable lien on a different theory. However, on the record, we see no element present of the claimed estoppel. The estoppel is based on the fact that while Hoag, the secretary and executive agent and sole representative of the plaintiff in the transaction, and while acting for it and in its behalf, made the loan to Brummitt, still Hoag, also being the president of the Hoag Company, silently stood by without objection, as is asserted, and accepted on behalf of the plaintiff the assignment from Brummitt to the plaintiff of the whole contract, and as though Brummitt as the purchaser was the sole owner of it. But the court did not find, nor does the evidence disclose, that Hoag in the transaction acted for or represented the Hoag Company, or that it was interested or concerned in the transaction, or that it derived any benefit therefrom.

Thus, though it be assumed, as is asserted, that the     4, 5 assignment was of the whole contract and Brummitt, as the purchaser, the sole owner of it, which is not fairly implied by the language of the granting clause of the assignment, still Hoag not then acting for the Hoag Company in the transaction, not doing anything within the scope of his employment or otherwise for it, but acting solely for and on behalf of the plaintiff, his act and conduct in the premises in no sense can work an estoppel against the Hoag Company. The case is not, nor is it claimed to be, within the rule of an estoppel through ratification or adoption.

There is a further reason why the claimed estoppel may not here be invoked. That the Hoag Company, with Brummitt, had an undivided one-half interest in the contract, is admitted by all parties concerned, and so was found by the court. That the moneys paid by it on the contract were paid in good faith and to protect the contract is in substance also found by the court, and is not disputed by any one. When the assignment was made to the plaintiff, there was due and unpaid on the contract the sum of $6,074.60, as well as some unpaid taxes. Unless such obligations were discharged in accordance with the terms of the contract, plaintiff's assignment was valueless, and its interest in the contract subject to forfeiture. The plaintiff did not pay anything to protect the contract, or, so far as the record shows, claim or assert any· interest, until after the Hoag Company had paid the whole of the principal and interest due on the contract and all the taxes then due and unpaid. Though, as found by the court, Parker had notice of the assignment to plaintiff, still, on the theory that he made the loan to the Hoag Company in good faith and to protect the contract, the court decreed him a first lien as to the balance due and remaining unpaid on his loan; but as against the plaintiff the court gave the Hoag Company nothing, though with the moneys obtained by it from Parker, more than one-half of which it repaid to Parker, together with its own note to Meal, which it also paid, it discharged all of the remaining obligations of the contract, and, too, gave it nothing, notwithstanding, as the court found, that:

"If such loan had not been made, and said payment made, the plaintiff herein would have lost its lien upon the property."

The correctness of that finding is not questioned. In such view, subordinating all the rights of appellant in and to the premises to those of the plaintiff was erroneous and inequitable. Because of the findings, and as shown by the evidence, that the appellant, under claim of right and in good faith to protect the contract, substantially discharged· all of the contract obligations, and, had it not done so, plaintiff would have lost all rights, whatever they were, which in virtue of the assignment it had in and to

the contract, the appellant was entitled to be reimbursed for all moneys so advanced and paid by it, together with interest thereon, before awarding plaintiff anything of the proceeds of the sale of the property, except what Brummitt may himself have paid on the contract, of which there was neither evidence nor findings.

That part of the decree awarding judgment against Brummitt on the note, ordering a sale of the property, and, after costs and expenses of sale, directing that Parker be first paid out of the proceeds of sale, is affirmed. No complaint is made of that. That part of the decree directing that plaintiff be paid out of such proceeds, before any of them are applied in payment of moneys paid and advanced by the appellant, is reversed. While the record shows that about all of the payments made on the contract, except the initial payment, were made by Hoag and the Hoag Company, and while the record also shows the amount of money so paid by them, still the court made no finding in such respect, further than that Hoag and the Hoag Company paid substantial amounts on the contract and for taxes and assessments. Because of the views entertained by the trial court as hereinbefore indicated, and because no accounting between Brummitt and Hoag or the Hoag Company was presented by the pleadings, the court may have felt uncalled on to make findings in such respect.

The case is therefore remanded to the district court, with directions to permit amendments to the pleadings, if the parties or any of them be so advised, presenting an accounting as between Brummitt and Hoag and Brummitt and the Hoag Company, and to ascertain and determine what, if any, moneys or other consideration, if any, were paid by Brummitt on the contract, either of principal, interest, or taxes, and the amount so paid by Hoag and the Hoag Company, or furnished by them or either of them, and if the proceeds of sale, after paying Parker, be sufficient to pay what was so paid or advanced by Brummitt and Hoag and the Hoag Company, then the amount so found paid by Brummitt to be paid the plaintiff, not exceeding the amount due and unpaid on its note, and the amount paid by Hoag and the Hoag Company be paid to the Hoag Company, and the surplus, if there

be any, divided equally between Brummitt and the Hoag Company. If the remaining proceeds, after paying Parker, are not sufficient to pay all that was paid and advanced by Brummitt and Hoag and the Hoag Company, then such remaining proceeds be divided in proportion to the amount so paid on the one side by Brummitt and on the other by Hoag and the Hoag Company, the proportion so having been paid by Brummitt to be paid to the plaintiff, and that paid by Hoag and the Hoag Company to the Hoag Company. The appellant is given its taxable costs on this appeal, to be taxed against and recovered from the plaintiff.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.