## AMERICAN SMELTING & REFINING COMPANY v. INDUSTRIAL COMMISSION et al.

No. 4977.   Decided August 28, 1930.   (290 P. 770.)

504

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiff.

*Geo. P. Parker,* Atty. Gen., *M. Logan Rich,* Deputy Atty. Gen., and *E. D. Sorenson,* of Salt Lake City, for defendants.

ELIAS HANSEN, J.

In this proceeding the plaintiff seeks a review and an annulment of an award of compensation granted to Adolph Ofgren by the Industrial Commission of Utah. The commission, after hearing the evidence, found the following facts:

"1. The applicant, Adolph Ofgren, on February 7, 1929, was employed by the American Smelting & Refining Company as a laborer; on said date said company had in its employ three or more workmen and was known and designated as a self-insurer; Mr. Ofgren on said date was paid a wage amounting to the sum of $3.40 per day working seven days per week.

"2. On February 7, 1929, the said Adolph Ofgren, while engaged in dumping railroad car, caught his left hand between dumping lever

and end of car sustaining abrasion to his thumb, badly lacerated index finger, laceration of middle finger with fracture of the proximal phalanx. Following the accident the applicant's injuries were dressed by Dr. F. E. Boucher of Murray, Utah; he was instructed to report to Dr. W. N. Pugh at Salt Lake City to have the fracture reduced. The injured employee would not permit Dr. Pugh to reduce the fracture either with or without anaesthetic; therefore the doctor simply applied a dressing.

"3. The evidence shows that Mr. Ofgren has refused in this case proper medical aid tendered to him as a result of which he contracted a very severe infection resulting in the entire loss of the great finger of the left hand and at this time a considerable loss of function of the left hand at the wrist.

"4. The applicant was very timid and probably over-sensitive to any pain that would follow surgical treatment, and for that reason he refused the treatment suggested by the attending physician rather than from wilfulness on his part to thwart the purposes of the surgeons or extend the period and extent of his disability period.

"5. It is questionable as to whether or not the condition of the applicant's left hand at this time is fixed. The Commission therefore makes a tentative rating of approximately 33⅓ loss of function to his left hand at the wrist. The applicant should use his hand actively in his employment and return for re-examination and final rating on or about May 1, 1930.

"6. That at this time applicant has suffered a permanent partial loss of the use of his left hand at the wrist equal to 33⅓; time only can reveal whether or not this present disability is permanent."

The plaintiff was ordered to pay the applicant $13.02 per week for a period of twenty-five weeks to apply on account of the loss of function to applicant's left hand at the wrist.

The plaintiff contends that the facts found by the commission do not support the award because the partial loss of function of Mr. Ofgren's left hand at the wrist was caused by the refusal of Mr. Ofgren to submit to proper medical treatment. In support of such contention the following authorities and cases are cited: *Utah Copper Co.* v. *Industrial Comm.*, 69 Utah 452, 256 P. 397; Annotations L. R. A. *Strong* v. *Soken-Galambia Iron & Metal Co.*, 1916A, 387, 6 A. L. R. 1260, 18 A. L. R. 431; 109 Kan. 117, 198 P. 182,

18 A. L. R. 415; *Lesh* v. *Illinois Steel Co.*, 163 Wis. 124, 157 N. W. 539, L. R. A. 1916E, 105; *Moran* v. *Oklahoma Eng. & Mach. Co.*, 89 Okl. 185, 214 P. 913; *O'Brien* v. *Albrecht Co.*, 206 Mich. 101, 172 N. W. 601, 6 A. L. R. 1257; *Kricinovich* v. *Car & Foundry Co.*, 192 Mich. 687, 159 N. W. 362; *Myers* v. *Wadsworth Mfg. Co.*, 214 Mich. 636, 183 N. W. 913; *Schiller* v. *Baltimore & O. R. Co.*, 137 Md. 235, 112 A. 272; *Swift & Co.* v. *Industrial Comm.*, 302 Ill. 38, 134 N. E. 9; *Mt. Olive Coal Co.* v. *Industrial Comm.*, 295 Ill. 429, 129 N. E. 103; *Joliet Motor Co.* v. *Industrial Bd.*, 280 Ill. 148, 117 N. E. 423; *Snook's Case*, 264 Mass. 92, 161 N. E. 892.

The general rule deducible from the adjudicated cases is this: If an injured employee unreasonably refuses to submit to proper medical treatment, and as a result his disability or injury is rendered greater or permitted to ▮ continue, then such disability or injury as is caused by the unreasonable refusal to submit to treatment is said to be attributed to the voluntary act of the employee and not to the accident. In determining what constitutes a reasonable and what an unreasonable refusal to submit to medical treatment, the facts and circumstances of the particular case must be inquired into. It is quite generally held that when a disability can be prevented or removed by a minor and safe operation, or by safe medical treatment, then it is the duty of the injured employee to submit to such operation or treatment, and a refusal to do so will defeat his claim for compensation for the disability caused by the refusal to submit to treatment. The evidence in this case and the commission's findings of fact show that the proposed treatment of Mr. Ofgren's injured hand by Dr. W. N. Pugh was proper and safe. No claim is made to the contrary. It is argued in support of the award that the only treatment Mr. Ofgren refused to permit was the reduction of the fracture of the finger, and that even if the fracture of the finger had been reduced, still the infection would have developed. If the facts are as contended for by Mr. Ofgren, he is not precluded from recovering compensation because

he refused to have the fracture reduced. The commission, however, found to the contrary.

There is evidence to support the finding of the commission that Mr. Ofgren's finger would have been saved if he had submitted to medical treatment. The facts as disclosed by the record are these: On February 7, 1929, Mr. Ofgren was injured while in the course of his employment with the American Smelting & Refining Company at Murray, Utah. Immediately after he received the injury, Dr. Boucher was called in. Mr. Ofgren's index and middle fingers were lacerated and the middle finger had sustained a compound fracture at the proximal phalanx. Dr. Boucher treated the fingers. He attempted to reduce the fracture and he also applied antiseptic dressings to prevent infection. He told Mr. Ofgren to report the next day to Dr. Pugh's office at Salt Lake City where Mr. Ofgren resided, for examination to see whether the fracture was properly set and for further treatment. On February 9th Mr. Ofgren called at the office of Dr. Pugh. An X-ray picture was taken of Mr. Ofgren's finger and the picture was developed while Mr. Ofgren was in the office. The picture was shown to Mr. Ofgren, and Dr. Pugh explained to him what was necessary to properly reduce the fracture and treat the finger. Dr. Pugh then took off the dressing and examined the wound and attempted to explore it by probing so that it could be cleaned out. An attempt was then made to set the bone by pulling the finger so that the ends of the bone would come together. Mr. Ofgren then refused to submit to this treatment. Dr. Pugh then told Mr. Ofgren that if he desired he would give him an anaesthetic. Mr. Ofgren refused. Dr. Pugh then stated to Mr. Ofgren that if he so desired another doctor would be called in to treat him. Mr. Ofgren replied that he did not wish anything done. Dr. Pugh then informed Mr. Ofgren that he would not be responsible for anything that might occur to his hand in the future. Mr. Ofgren refused to submit to any treatment except to have his injured hand dressed, and he signed a written statement to that effect.

Dr. Pugh informed one of the members of the Industrial Commission of Mr. Ofgren's refusal to submit to treatment. It further appears that Mr. Ofgren had his injured fingers dressed from time to time until the infection set in. Dr. Pugh expressed it as his opinion that if Mr. Ofgren had submitted to treatment, infection would not have set in and it would not have been necessary to amputate the finger. Dr. Pugh further testified that the treatment that he proposed giving to Mr. Ofgren was the proper treatment, and that while the finger may have become infected under such treatment, it was very unusual that infection sets in as a result of an injury such as that sustained by Mr. Ofgren where the injury is properly cared for. There is no direct testimony that the infection in Mr. Ofgren's finger would have developed if he had submitted to proper medical treatment.

Under our limited power of reviewing the awards of the Industrial Commission, we cannot make findings for or modify the findings of the commission. In other words, the award must be affirmed or annulled upon the facts found by the commission and not upon what we might believe the facts to be.

The commission excused the refusal of Mr. Ofgren to have the finger treated because he was timid and probably oversensitive to pain. Do such facts constitute an excuse for the refusal of Mr. Ofgren to submit to the proposed treatment? The question must be answered in the negative. Doubtless some people are very timid and exceptionally sensitive to pain. A workable rule of law, however, must be general in its application and may not be varied to meet individual idiosyncrasies. The injured workman should be held to the duty of submitting to proper treatment either medical or surgical when it involves no serious risk or suffering and when it is such as a man of ordinary manly character would undergo for his own good. *Jendrus* v. *Detroit Steel Products Co.*, 178 Mich. 265, 144 N. W. 563, L. R. A. 1916A, 381, Ann. Cas. 1915D, 476. The

facts found by the commission as a reason for Mr. Ofgren's refusal to submit to medical treatment do not in law excuse him for his refusal.

It is further urged in support of the award that Mr. Ofgren was suffering severe pain and was only semiconscious when he refused the proffered treatment, and that he was not aware of the probability that serious results would follow his refusal to submit to the treatment. Mr. Ofgren did testify to that effect. From the findings of the commission it would appear that the commission did not believe that testimony. In any event, no finding was made to that effect. If the commission believed that Mr. Ofgren was only semiconscious at the time he refused the treatment, or if the commission believed that he did not know or have good reason to believe that serious consequences would probably follow his refusal to accept the proffered treatment, then such fact or facts were proper for the commission to consider in connection with all the other facts and circumstances surrounding the refusal in determining whether the applicant acted reasonably or unreasonably in his refusal to submit to the proposed treatment. The only facts found were that Mr. Ofgren refused the proffered treatment because he was timid and probably oversensitive to pain. Such facts alone do not constitute a legal excuse for the refusal of Mr. Ofgren to submit to the proper medical treatment.

The award is annulled.

EPHRAIM HANSON, J., concurs.

STRAUP, J.

I concur. That the applicant sustained an injury in the course of his employment is clear enough. Let it also be assumed that in consequence thereof he was entitled to some compensation, though his injured fingers had entirely healed and the injury had not resulted in any permanent disability.

But that is not the point. The commission allowed him compensation on the basis of the present condition of his fingers hand, and wrist. To the extent that such conditions and disability were produced or materially contributed to by an unreasonable refusal of the applicant to submit to proper medical and surgical treatment tendered him, he was not entitled to receive compensation and the commission was not justified in awarding it. The commission from the evidence adduced expressly found that the applicant refused medical aid tendered him, and "as a result of which he contracted a very severe infection resulting in the loss of the great finger of the left hand and at this time a considerable loss of function of the left hand at the wrist." Notwithstanding the found and described conditions and disability were due to the refusal of the applicant to accept or permit proper medical treatment, the commission nevertheless allowed him full compensation therefor. Unless there was some just and reasonable ground or basis for the refusal, the commission was not justified in awarding compensation resulting from or contributed to by the refusal. That the applicant refused the tendered treatment and aid is amply supported by the evidence. The only found ground or basis for the refusal is that the "applicant was very timid and probably over-sensitive" and "for that reason he refused the treatment." But that is not a sufficient or a reasonable ground. From the findings it appears that the commission took the view that unless the refusal was "from willfulness on his part to thwart the purposes of the surgeons or extend the period and extent of his disability period," the refusal in effect was not unreasonable and would not deprive the applicant from receiving compensation for a condition or disability directly resulting from the refusal. An award made on such basis is defenseless. An allowance of compensation or an award made on such theory or basis, if not directly predicated on, as here it seems to be, nevertheless, is influenced and induced by a misconception and misapplication of the law, and hence an award so made is against

law and ought to be annulled. *Denver & Rio Grande R. Co.* v. *Industrial Comm.* (Utah) 272 P. 239.

The argument that the infection was not the result of the refusal and that the finding to that effect is not supported by the evidence is beside the question, and in no particular tends to obviate or cure the mischievous effect of allowing compensation and making an award on a wrong principle of law or on a basis or theory not sanctioned by the law.

Further, I think there is ample evidence in the record to support the finding in such respect. The applicant received first aid from a local physician and surgeon and then was immediately sent to the regular physician and surgeon of the employer to have the injured fingers and hand X-rayed and the applicant given such treatment as was required. The applicant visited the regular physician, who took an X-ray of the fingers and hand and advised him what was necessary to be done and that unless treatment as advised was given the injury would result in a deformity of the finger. The applicant had a compound fracture and laceration of one of his fingers and lacerations and bruises of others. The regular physician and surgeon testified that the applicant would not permit him "to do anything" by way of treatment except to use moist dressings; that he was unusually patient with him, attempted to probe and cleanse the wounds and adjust the fracture, offered to take the applicant to a hospital, give him an anaesthetic if he desired, and offered to treat the wounds as they ought to have been treated, but that the applicant would not permit him to do so, or to do anything, except apply moist dressings; that the physician told him that unless he consented to proper treatment to be given him he would not be responsible for whatever conditions might result; that the applicant signed a written statement to that effect, and that he informed the applicant that if he desired he could be treated by whatever physician and surgeon he might select; that the applicant came to him irregularly and but a few times for moist dressings; that he came to him the first time about February 9th

and after giving a few moist dressings, the next the physician knew about the case was on February 14th when the applicant at midnight called up the office and, the regular physician being ill and absent at the time, another physician got the call, visited the applicant, found the wound badly infected and the finger swollen and much pus, and ordered the applicant to the hospital, where the finger was amputated. The physician further testified that if the applicant had permitted proper treatments to be given there would have been no occasion or necessity for the amputation. He was asked by one of the commissioners:

"Q. Would you say doctor that if the applicant had submitted to treatments as suggested by you on the first examination that he would not have had infection in his finger? A. The only thing we have to go on Commissioner Knerr is that we don't expect those results if we get them and give them the proper care. We can't always prevent an infection, but we don't get infection of any consequence—probably once in fifty cases.

"Q. If he had submitted to your treatment do you think it would have been necessary to amputate the finger? A. I don't think so.

"Q. You expected under ordinary conditions to get a good result? A. Yes. I never mentioned amputation, and it was not a case where amputation would be considered."

By counsel for the applicant the physician was asked:

"Q. Assuming that his hand at the time of the injury was dirty, and the bone protruded from the flesh at the break, isn't it likely that that might have been a case of infection? A. Oh, yes. Anyone with a break in the skin may have an infection.

"Q. You would not say that the infection was the cause of his refusal to have it set at that time? A. No, absolutely not.

"Q. It may have been dirt that got into the wound at the time of the injury? A. Yes, but having antiseptic and surgical treatment, and in addition cleaning of the wound and proper drainage ordinarily you would not get infection. * * *

"Q. If some dirt had got in there, by yielding to your suggested treatment in setting the bone, would not have prevented the infection? A. I would say that in forty-nine cases out of fifty it would. We don't look for results of that kind if they are properly taken care of. If infection has developed, you can open the wound and use antiseptic and drainage and very often it will subside.

"Q. Isn't it very unusual for serious infection of this kind to happen where the bones are broken if the skin is not broken? A. Very unusual, yes.

"Q. And in this case the skin was broken? A. In this case the skin was broken, yes. It was a compound fracture."

To thus argue that it was conclusively shown—that there was no evidence to the contrary—that the infection and amputation were not the result of the applicant's refusal to submit to proper treatment and that it was conclusively shown that had he yielded to the treatments tendered him and had he been properly treated, an infection and amputation nevertheless would have developed and would have been required, is not, as I think, supported by the record, and is merely conjectural.

FOLLAND, J.

I dissent. Finding No. 3 is as follows:

"The evidence shows that Mr. Ofgren has refused in this case proper medical aid tendered to him as a result of which he contracted a very severe infection resulting in the entire loss of the great finger of the left hand and at this time a considerable loss of function of the left hand at the wrist."

The evidence does not show that the infection which caused the loss of the finger resulted from Ofgren's refusal of medical aid. The medical witness would not, and did not, say that this refusal caused the infection. The infection was already in the wound, undoubtedly from the time of injury. The applicant refused the proffered surgical aid to reset the fractured bone of the finger. He submitted to the treatment of applications of antiseptic moist dressings and went to the doctor's office several times to have this treatment applied. The application of moist dressings made by the medical staff of petitioner, and to which the applicant readily submitted, was for the purpose of reducing and curing infection. It was because this treatment failed of its purpose that he lost his finger, and not because the bone had not

been properly set. Had the moist dressing treatment been successful in curing the infection, the finger would have healed with a possible crooked bone. Had that been the result, and application were made for compensation for the crooked finger and possible loss of function, the rule announced in the main opinion would apply and the applicant could not recover. The condition of the crooked finger would have been the result of his refusal to permit the surgeon to properly reduce the fracture. If finding No. 3 is disregarded, finding No. 4 becomes immaterial and should also be disregarded. It is the rule that findings not supported by the evidence must be disregarded. *Evona Inv. Co.* v. *Brummitt*, 66 Utah 82, 240 P. 1105; *Austin* v. *Newton*, 46 Cal. App. 493, 189 P. 471.

The error of the commission in making such findings is harmless, as the findings are not necessary to support the award. *Thomas* v. *Foulger* (Utah) 264 P. 975. Findings Nos. 3 and 4 should be disregarded. Without them the award is amply supported by the evidence and the remaining findings which are free from error.

The award therefore should be affirmed.

CHERRY, C. J.

I concur in the views expressed by Mr. Justice FOLLAND.