# AMERICAN SMELTING & REFINING CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5132. Decided May 2, 1932. (10 P. [2d] 918.)

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiff.

*Geo. P. Parker,* Atty. Gen., and *E. D. Sorenson,* of Salt Lake City, for defendants.

ELIAS HANSEN, J.

The Industrial Commission of Utah awarded Adolph Ofgreen compensation because of a permanent injury sustained by him. The injury consisted in the loss of a finger and the partial loss of the use of his left hand. Mr. Ofgreen was injured in the course of his employment by the plaintiff at its smelter at Murray, Utah. Plaintiff prosecutes this proceeding to review the award. This is the second time this cause has been before us for review. In the former review the award was annulled. *American Smelting & Refining Co.* v. *Industrial Commission of Utah,* 76 Utah 503, 290 P. 770. At the first hearing the commission found that "the evidence shows that Mr. Ofgreen has refused in this

case proper medical aid tendered to him as a result of which he contracted a very severe infection resulting in the entire loss of the great finger of the left hand and at this time a considerable loss of function of the left hand in the wrist." The commission by its former findings sought to excuse Mr. Ofgreen's refusal to accept treatment by a further finding that "he was very timid and probably over-sensitive to any pain that would follow surgical treatment and for that reason he refused the treatment suggested by the attending physician rather than willfulness on his part to thwart the purposes of the surgeon or to extend the period and extent of his disability period." When this cause was before us on the former review, we held that the finding of the commission "that Mr. Ofgreen has refused * * * proper medical aid tendered to him and as result of which he contracted a very severe infection resulting in the entire loss of the great finger of his left hand * * * and considerable loss of function of the left hand at the wrist" was supported by the evidence and that such finding precluded Mr. Ofgreen from a right to compensation for the injury caused by his refusal to accept treatment of his injury.

We further held that the fact that Mr. Ofgreen was timid and probably oversensitive to pain was not a legal excuse for his refusal to accept proper medical aid. After the former award was annulled, the Industrial Commission granted a rehearing, and at the rehearing further evidence was offered touching the question of whether or not Mr. Ofgreen's finger and the use of his hand would have been saved if he had submitted to proper medical treatment. Upon the original hearing as well as upon the rehearing it was conceded that Mr. Ofgreen received an injury while employed by the American Smelting & Refining Company. The plaintiff company has never made any claim to the contrary. What the company contends is that it is not liable for the permanent disability sustained by Mr. Ofgreen because the immediate or proxi-

mate cause of his permanent injury was his unreasonable refusal to submit to the treatment of the injury which he sustained while in the employ of the company. That was the sole question of inquiry at the rehearing. The commission in the findings now before us for review has made no findings on that issue. Its findings are confined to facts that were not in issue, except as to the extent of the permanent disability sustained by Mr. Ofgreen. It may be that the commission adheres to its former views, it may have believed the fact to be otherwise, it may have refrained from making any finding on the issue before it in the mistaken belief that such a finding is immaterial, or it may be that the commission purposely refrained from making any finding as to the result of the refusal of Mr. Ofgreen to accept medical treatment and thereby evade the effect of the law announced by this court in its former opinion. We are at sea to know what the commission believed the fact to be on that all-important issue. When an award of compensation bottomed upon written findings of fact is brought here for review, and the sufficiency of the findings to support the award is questioned, this court is required to determine whether the findings of fact support the award. Laws Utah 1919, c. 63, p. 165. It is difficult to see how this court can perform the duty thus imposed upon it by law where the findings are silent as to the sole fact at issue, a fact of controlling importance. It is urged in support of the award now under review that the commission is not required to make written findings of fact. There are cases wherein this court has so held. It however, by no means follows that, where written findings are made, such findings may be said to be sufficient to support an award, even though they do not find upon the material issues which divided the parties. Where findings are not made by the commission, the situation is analogous to a case where findings are waived in an action tried to a court. When no findings are made, it will be presumed, where there is evidence to support the award or the judgment that the facts actually

found are in accord with the award or judgment rendered. Where there are written findings of fact, and the claim is made that such findings do not support the award or judgment, it becomes necessary for a reviewing court to examine into the findings in the light of the issues to ascertain whether the award or judgment is supported by the facts as found. A reviewing court may not well apply one rule for testing the sufficiency or insufficiency of the findings to support an award made by the Industrial Commission and a different rule when dealing with a judgment rendered by a court. There is nothing in the Workmen's Compensation Act which indicates that a different rule should be applied in testing the sufficiency of the findings to support an award than in testing the sufficiency of the findings to support a judgment. The reasons upon which the rule is founded are present alike in both cases. The fact that the commission is not required to make written findings does not justify the conclusion that, when written findings are made, they shall not be treated according to approved rules. Especially cannot the presumption be indulged in the instant case that the commission found all of the facts which are necessary to sustain the award in favor of the applicant. The last and only finding made by the commission as to the immediate or proximate cause of the permanent partial disability of the applicant was, in legal effect, a finding that the present impairment of the use of his left hand was caused by his failure to accept proper medical treatment. To say that the commission changed its mind in the light of the additional evidence offered at the second hearing would be a mere guess. If the commission were of the opinion that the failure of the applicant to accept proper medical treatment was not the proximate cause of the infection and resulting partial loss of the use of his hand, it would have been a simple matter to have so found. This is not a case where no findings of fact were made. The commission having made findings of fact, it must be assumed that it found on all the facts that it deemed necessary to its decision. Otherwise the facts

found could serve no useful purpose. When the commission undertakes to make findings, it should find upon all of the material issues, otherwise a reviewing court is powerless to determine whether the award should be affirmed or annulled. A reviewing court cannot determine whether an award is or is not supported by the findings, where, as here, the findings are silent as to the only fact in issue, a fact which must be known before the law applicable to the cause can be announced with even a semblance of assurance that the right result has been reached.

One of the findings made by the commission on the second hearing reads as follows: "On February 7th, 1929, the said Adolph Ofgreen, while engaged in dumping a railroad car for the defendant employer, caught his left hand between dumping lever and end of car, sustaining abrasion to his thumb, badly lacerated index finger, laceration of middle finger with fracture of proximal phalanx, as a result of which it was necessary to amputate applicant's middle finger at the proximal joint by reason of infection resulting from said injury sustained on February 7th, 1929, and that as a result of said injury the applicant has sustained 33⅓% loss of function to his left hand at the wrist."

A similar finding was made by the commission at the first hearing. It is urged that the above finding negatives any inference that the commission believed that the failure of Mr. Ofgreen to accept medical treatment was the proximate cause of the infection and resulting loss of function of his left hand. The remote cause of the partial permanent disability sustained by Mr. Ofgreen was the injury which he received while working for the plaintiff at its Murray smelter. No one has made any claim to the contrary. The finding relied upon to support the present award cannot fairly be said to be equivalent to a finding that the proximate cause of the present disability sustained by Mr. Ofgreen was the injury which he received while working at plaintiff's smelter, and that his refusal to accept medical treatment had nothing to do with the infection which, ac-

cording to all of the evidence, made it necessary to amputate the finger. To so hold would be to give a meaning to the finding not conveyed in the language used.

It is further urged on behalf of the plaintiff that the commission was without jurisdiction to grant a rehearing. The hearing had before the commission after the first award was annulled was not, as that term is generally used, a rehearing. It was more in the nature of a new trial. Our Workmen's Compensation Act, Laws of Utah 1919, c. 63, p. 165, directs that "upon the hearing the [Supreme] court shall enter judgment either affirming or setting aside the award." When this court makes an order merely setting aside an award, such order, in the absence of a direction to the contrary, entitles the defeated party to a retrial of the issue before the Industrial Commission. The legal effect of the former order annulling the award was to grant a retrial, and such is the effect of the present order. The Industrial Commission had jurisdiction to hear this cause after the former award was annulled by this court.

The award is annulled.

EPHRAIM HANSON, J., concurs.

STRAUP, J.

I concur. By a divided court the award on the first review was annulled because of the finding of the commission that the loss of the applicant's finger and the loss of function of his hand and for which he claimed and was awarded compensation were the result of a severe infection due to the refusal of the applicant to permit proper medical and surgical treatment. The applicant on sustaining an injury was given first aid by a physician at Murray and then was directed to report the next day for examination and treatment to the chief surgeon of the employer at Salt Lake City but six or seven miles away. The applicant did so, not on the next day, but the day thereafter. The chief surgeon examined the lacerated and injured fingers, took an X-ray

of them, and found a compound fracture of the middle finger of the hand. He then undertook to remove devitalized tissue and such foreign matter as might be present, cleansed the affected parts, and reduce the fracture. To that the applicant objected and did not permit the chief surgeon to do so. The necessity to do that was fully explained to the applicant and the evil effects likely to follow if that was not done. Notwithstanding the explanation, the applicant did not permit any kind of treatment except application of wet dressings. He was told that, if he did not desire the chief surgeon to treat the case, he was privileged to select any physician and surgeon he might desire. That was also rejected. The chief surgeon also advised him that, unless he permitted proper and necessary treatment, he would not be responsible for any complications or ill effects that might result. So, to protect the surgeon, the applicant voluntarily signed a written statement that "I refuse to allow Dr. Pugh (the chief surgeon) or any other doctor to reduce the fracture of my finger and give what treatment is necessary to improve the deformity and prevent possible complications," either with or without an anesthetic. Thus, the only treatment the surgeon was permitted to give was the application of wet dressings. Even as to that, the applicant did not report as frequently and at such times as he by the doctor was asked to do.

The chief surgeon first saw the applicant on the 9th of February, two days after the injury. He saw him two or three times after that. Each time the applicant refused to be treated as the doctor desired to treat him. On the night of the 14th, or the early hours of the 15th, another physician was called at the house of the applicant who found him suffering from a severe infection and removed him to a hospital, where, on the next day or the day thereafter, the applicant's finger was amputated. Notwithstanding the finding of the commission on the first hearing that the infection was the result of the refusal of the applicant to be properly treated, the commission granted him an award for the loss of his

finger and loss of function of the hand, on the theory that his refusal was due to timidity and an oversensitiveness to pain, although it indisputably was shown that the surgeon offered to have a proper anaesthetic administered if the applicant desired it. It also was shown and not disputed that the treatment offered to be given the applicant was a proper treatment.

After the award was annulled by us, the commission, over the objection of the employer, granted the applicant a rehearing. On that hearing the record of all the evidence and of all the proceedings had on the first hearing was put in evidence. The chief surgeon of the employer was again called as a witness. His testimony in every material respect was the same on that hearing as it was on the first and again explained the condition of the injury when he first saw it, the necessity of cleansing the affected parts, removing the devitalized tissues and all foreign matter that might be present, and to reduce the fracture and the complications likely to follow if that was not done. The evidence as to the refusal of the applicant to permit the chief surgeon to give him any treatment except the application of wet dressings was the same on the second as it was on the first hearing.

No testimony was given by the applicant himself on the second hearing. The record merely of his testimony on the former hearing was put in evidence. No other evidence was adduced by him other than the evidence adduced on the former hearing, except two physicians called by him who were not called and who gave no testimony on the first hearing. Neither of them saw the wound or knew anything about it. No history of the case was given them, nor as to the character of the injury, other than as stated in a hypothetical question submitted to them. The hypothetical question was as follows:

"Assuming Doctor that an individual had a compound fracture of the middle of the large finger, and that fracture was treated and dressed, and set according to the best skill and treatment by a reput-

able physician, and then the hand at the time of the fracture was dirty and grimy, and the flesh considerably lacerated, and then a couple of days later this patient should call upon a reputable physician and surgeon and he should dress it the best he knew how, but that he found that the fracture of the bones had not been properly set and he had attempted to set the bones at that time and the patient refused to permit him to reduce the fracture, and that he called the next day and had that finger dressed by that physician, and he called the following day again and intermittently thereafter for a week he called and had it dressed, and seven days after the injury that infection had developed to such a serious stage in his hand that it was necessary to amputate the finger, what would you say caused the infection?"

In a number of particulars, the hypothetical question does not embody the material facts of the case, and in some particulars embodied facts concerning which there is no evidence. The statement "that the fracture was treated and dressed," according to the best skill and treatment of a reputable physician, refers to first aid treatment rendered by the physician at Murray, but is not in accordance with the fact. All such physician did was to render first aid and send the applicant for examination and treatment to the chief surgeon at Salt Lake City. Nor is the statement that a couple of days later the applicant called on a physician (the chief surgeon) "who dressed the injury and fracture the best he knew how," for that the evidence indisputably shows that the chief surgeon was not, because of the refusal of the applicant, permitted to give proper or necessary treatment or any treatment except the application of wet dressings. In other words, the hypothetical question eliminated the all-important element that the applicant without dispute refused to permit the chief surgeon to give proper and necessary treatment; that he not only refused to permit the fracture to be reduced, but also refused all other proper or necessary treatment to be given and as was voluntarily stated by him in his written statement, or to permit the surgeon to do anything except to apply wet dressings. But, upon the submitted hypothesis, the physician called was asked, "What would you say caused the infection?"

The witness, after stating what he regarded "the problem to be," and by "assuming that we had to begin with an open wound with grime and dirt in it and a period of seven days had elapsed before the infection set in," to which counsel for the applicant stated, "before the finger had developed to such a stage" as was necessary to amputate it, and stating to the witness that he was permitted to "recite the facts and answer the question so that you are clear in your mind," finally answered that the infection "might very properly have been due to infection at the time of the injury." Of course, had there been no injury, there would not have been an infection. But that was not the real point in controversy. The question is, Had the applicant permitted proper and necessary treatment, could or would the infection have been avoided or arrested, no infection having been present when the chief surgeon first saw the case? The chief surgeon testified that in forty-nine cases out of fifty there would not have been any infection developed, or any necessity of amputating the finger, or any loss of function of the wrist or hand, had the applicant permitted proper and necessary treatment to be given him. Indeed, there is no substantial conflict in the evidence as to that. The physicians called by the applicant did not testify nor even intimate that with proper and necessary treatment the infection could not or probably would not have been avoided or arrested. To the contrary, the first physician called by the applicant in part testified that the important thing, in such a wound as described to and stated by him, was treatment against possible infection; that the reduction of the fracture was an important element; that the first thing to be done was the elimination of everything which was a predisposing cause to an infection, including cleansing and sterilizing the wound, and that displacement of the bone would be a predisposing cause to an infection, for "a displacement might be an important disturbance in the wound." The other physician called by the applicant, in substance, testified to the same matters as testified to by the first physician.

So, while additional testimony of such physicians, and only such additional evidence, was adduced at the second hearing, yet it in substance was not such as to justify or permit a finding contrary to the finding made by the commission on the first hearing to the effect that the refusal of the applicant to permit proper medical and surgical treatment resulted in a severe infection necessitating amputation of his finger and the loss of function in his left hand or wrist. The commission on the second hearing made rather complete findings on all the issues, except as to the real issue in controversy. Though specifically found with respect thereon on the first hearing, the commission failed or avoided to do so on the second hearing. If the evidence on the second hearing had been materially different from that on the first hearing so as to justify a finding that the loss of the applicant's finger and loss of function of his hand for which he was awarded compensation were not the result of his refusal to be properly treated, then, let it be assumed, the award should be upheld, though no specific finding was made as to the result or effect of such refusal. But I find no such difference in the evidence of the two hearings, nor did the commission find that there was any such difference. It merely on this hearing avoided making any finding on the subject—the real controverted issue—on which the commission so specifically and definitely made a finding on the first hearing and on which the award was by us annulled. It may be that on the record the commission felt that, if it again found on the subject, it could not well find other than or different from the finding made on the first hearing, and so de bonne grace made none, and thereby may have thought to destroy the effect of its finding in such particular made on the first hearing, but which finding, together with all other record proceedings of the first hearing, were wittingly or unwittingly, by the commission, read into and made a part of the record of this, the second hearing, and again certified and transmitted the whole thereof to us for review.

If our ruling on the first hearing was right, as I think

it was, and there being no substantial difference in the evidence of the two hearings as to the ground on which the award was annulled, our first ruling, though by a divided court, should be adhered to and not overthrown. If the applicant is entitled to the award now made, he was entitled to it on the first hearing. If he was not entitled to it then, because, as we held, of his refusal to permit proper treatment, he is not entitled to it now, for the evidence as to such refusal and the effect thereof is the same on the second as on the first hearing. Though it be assumed that on either hearing was he entitled to compensation for the loss or disfor the injury sustained by him, yet it is clear that on neither hearing was he entitled t ocompensation for the loss or disability which resulted from his willful refusal to be properly treated and for which he claimed and was awarded compensation. I therefore am of the opinion that the award should again be annulled.

### CHERRY, C. J.

I dissent. The question involved is whether compensation must be denied because the employee refused to submit to certain proposed surgical treatment for his injury. The injury consisted of lacerations and abrasions of his hand and a compound fracture of the middle finger. His wounds were dressed and his finger put in a splint by a doctor at the plant, who instructed him to report to Dr. Pugh at Salt Lake City. He presented himself to Dr. Pugh, who probed and cleansed the wound and made an X-ray examination, discovered the fracture, and proposed to reduce it. He then put on a splint and fastened it to the finger with rubber bands and attempted to set the bone by pulling the end of the finger, but the employee refused to permit him to do so. The doctor then treated the injury from time to time by the application of dressings. A week or so after the accident, infection developed in the employee's finger, and it became necessary to amputate it. It is not denied that the employee refused to have the fracture reduced, but it is

claimed in his behalf that such refusal was not the cause of the infection and loss of his finger.

At the former review an award of compensation to the employee was annulled by this court because of a finding made by the Industrial Commission at the first hearing to the effect that the employee refused proper medical aid tendered him "as a result of which he contracted a severe infection resulting in the entire loss of the great finger of the left hand." Thereafter the case was again heard by the Industrial Commission. Upon stipulation, all of the evidence produced at the original hearing was considered, and additional opinion or expert evidence was put in by the parties. At the conclusion of the last hearing, the Industrial Commission made findings and again awarded compensation to the employee.

The finding last made concerning the matter in dispute is that the employee sustained the injuries, describing them, "as a result of which it was necessary to amputate applicant's middle finger at the proximal joint by reason of infection resulting from said injury." No mention is made in the findings of the employee's refusal to submit to the surgical treatment tendered, nor of the consequences of such refusal.

It is contended by the employer that the original finding that the infection resulted from the refusal to accept proper treatment still stands and precludes compensation, since there is no contrary finding. This cannot be sustained. The decision of this court upon the review of the first award annulled the whole of the findings and decision of the Industrial Commission and left the case as it stood before any hearing was had or determination made. *Denver & R. G. W. R. R. Co.* v. *Industrial Comm.*, 74 Utah 316, 279 P. 612. The award before us now must be reviewed upon the record made at the last hearing.

As before stated, the principal grounds for opposing compensation was the employee's refusal to have his fractured finger set. This was answered on the part of the

employee by the contention that reducing the fracture was not for the purpose of preventing infection, but to avoid deformity, and that, while the refusal of the proffered treatment might have resulted in a deformed finger, it had no relation to the infection which developed and necessitated the amputation.

From the evidence on this subject, which was not positive or entirely satisfactory on either side, we think the Industrial Commission would have been justified in finding that the refusal to have the finger set was not the cause of the infection, but that it developed from the original injury. But such a finding was not made. The finding on this point, upon which the award under review rests, is merely that the employee's disability resulted from the injury. The question is thus presented of whether such a finding, under the circumstances of this case, will support the award without a particular finding upon the subject of the result of the employee's refusal to submit to the treatment offered him.

Findings of fact by the Industrial Commission are not required by law. *Denver & R. G. W. R. R. Co.* v. *Industrial Comm.*, 66 Utah 494, 243 P. 800, 803; *Moray* v. *Industrial Comm.*, 58 Utah 404, 199 P. 1023; *Bingham Mines Co.* v. *Allsop*, 59 Utah 306, 203 P. 644. The only requirement is that, when findings are made, they must be supported by competent evidence and must sustain the award. The rules of procedure applicable to trials in courts of law do not govern proceedings before the Industrial Commission. Such proceedings by express law are given a wider latitude.

Upon the issue of whether the employee's disability resulted from the injury or from his refusal to submit to proper treatment, the finding is that it resulted from the injury. Under the circumstances of the case a particular finding upon the consequences of the refusal to have the fracture set was most appropriate, but it cannot be said that such a finding was required by law. With respect to an analogous situation in *Denver & R. G. W.* v. *Industrial Comm.*, supra, we said: "The further contention that the

award should be annulled for failure of the Industrial Commission to make a specific finding of fact as to whether the hip infection was prior or subsequent in time to the abscess at the knee is without merit. The Industrial Commission is not required to make specific findings"—citing cases.

From the finding made we must assume that the Industrial Commission rejected the claim of the employer. The award should be affirmed.

FOLLAND, J.

I concur in the dissenting opinion of Mr. Chief Justice CHERRY.