## AMERICAN SMELTING & REFINING CO. v. INDUSTRIAL COMMISSION et al.

No. 5391.   Decided July 26, 1933.   (24 P. [2d] 309.
Rehearing Denied January 7, 1935.

See, also, 79 Utah 302, 10 P. (2d) 918.

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiff.

E. D. Sorenson, of Salt Lake City, and Joseph Chez, Atty. Gen., for defendants.

STRAUP, Chief Justice.

This case involves a review of proceedings of the Industrial Commission wherein Adolph Ofgreen, an employee of the American Smelting & Refining Company, was, in addition to compensation theretofore paid him by the company amounting to $309, awarded further compensation for 50 weeks in a lump sum of $651 for a 33⅓ per cent. permanent partial loss of function of the fingers and wrist of his hand. The only point in the case is as to whether the permanent disability is the result of the injury sustained by him, or of his refusal thereafter to accept medical and surgical treatment tendered him.

An injury was sustained by him, February 7, 1929, while he, in the course of his employment, was engaged in dumping a car whereby his hand was caught between the dump lever and the end of the car causing an abrasion of the thumb, a laceration of the index finger, and a laceration and fracture of the middle finger. The case was here twice before. Each time an award made was by us annulled.

The facts, so far as material, substantially are that, when

the applicant was injured, he was given first aid by a physician at Murray, who directed him to report the next day for examination and treatment to the chief surgeon of the company at Salt Lake City, about six miles away, and where the applicant resided. He reported to the chief surgeon on the 9th, who examined the lacerated and injured fingers, took an X-ray of them, and found a compound fracture of the middle finger. The surgeon undertook to remove devitalized tissue and such foreign matter as might be present, cleanse the affected parts, and reduce the fracture. To that the applicant objected and did not permit the surgeon to do so. The necessity to do that was explained to him and the evil effects likely to follow if that were not done, but the applicant did not permit any kind of treatment except the application of wet dressings. He was told that, if he did not desire the surgeon to treat the case, he was privileged to select any physician or surgeon he might desire, but such offer likewise was not accepted. The surgeon further advised him that, unless he permitted proper and necessary treatment, the surgeon would not be responsible for any complications or ill effects that might result. So to protect himself, the surgeon prepared, and had the applicant sign, a written statement that, "I refuse to allow Dr. Pugh (the chief surgeon) or any other doctor to reduce the fracture of my finger and give what treatment is necessary to improve the deformity and prevent possible complications, either with or without an anesthetic." The surgeon thereupon applied wet dressings to the wound, which was all the applicant permitted him to do. The applicant thereafter visited the surgeon two or three times, but each time refused to be treated as the doctor desired to treat him, and consented to the application of only moist dressings. On the night of the 14th or the early morning of the 15th, another physician was called to the house of the applicant, who found him suffering from a severe infection and removed him to a hospital, where on the next day or the day thereafter the applicant's finger was amputated.

The first hearing before the commission was had in June, 1929, which resulted in an award in November, 1929. As the result of the hearing, the commission found that "the injured employee would not permit Dr. Pugh to reduce the fracture either with or without an anesthetic, and, therefore, the doctor simply applied a dressing"; that "the evidence shows that Mr. Ofgren has refused in this case proper medical aid tendered him, as the result of which he contracted a very severe infection resulting in the entire loss of the great finger of the left hand and at this time a considerable loss of function of the left hand at the wrist; that the applicant was very timid and probably oversensitive to any pain that would follow surgical treatment and for that reason he refused the treatment suggested by the attending physician rather than from wilfullness on his part to thwart the purpose of the surgeon or extending the period and extent of his disability"; and thereupon the commission awarded him compensation for a $33\frac{1}{3}$ per cent loss of function at the rate of $13.02 per week for a period of 25 weeks, in addition to what the applicant had theretofore been paid by the company. On a review of the whole record transmitted to us, we held that the refusal of the applicant to submit to proper medical and surgical treatment was unreasonable and not justified, and that the reason given by the commission for such refusal was not, under the authorities, sound in law, and thus the award in August, 1930, was annulled. *American Smelting & Refining Co.* v. *Industrial Commission*, 76 Utah 503, 290 P. 770.

Thereafter, and in November, 1930, on the application of the employee, a further hearing was granted and had before the commission. On that hearing all the evidence taken and proceedings had on the prior and first hearing were put in evidence. The chief surgeon again was called and testified in substance as testified to by him on the first hearing. Two other physicians not called on the first hearing were also called, neither of whom had seen the wounds or had any knowledge concerning them, and only gave opin-

ions in response to hypothetical questions propounded to them. No other or additional evidence was adduced at the second hearing. The applicant himself was not called to give, nor did he give, any further testimony. However, the testimony given by him at the first hearing was put in evidence on the second hearing, as well as all other evidence adduced and proceedings had on the first hearing. As the result of that hearing, the commission made findings in substance that the applicant was injured February 7, 1929, in manner as hereinbefore stated, and "as a result of which it was necessary to amputate the middle finger of the left hand by reason of an infection resulting from the injury and as a result of such injury the applicant sustained 33⅓ per cent loss of function to his left hand at the wrist; that the defendant employer has heretofore paid to the applicant compensation on account of temporary total disability as provided by law"; and "in view of the foregoing" the conclusion was reached by the commission that the applicant was injured in the course of his employment, and that the company be required to pay him compensation in addition to that theretofore paid at the rate of $13.02 a week for a period not to exceed 50 weeks, or an aggregate sum of $651 to be paid in a lump sum. Such an order was made and entered by the commission. No finding was made as to the real issue, the refusal of the applicant to submit to proper medical and surgical treatment nor as to the effect of such resusal. With respect to such matter, the evidence on the second hearing was identical with the evidence on the first hearing and on which the commission had found that the infection was the result of the applicant's refusal to submit to proper medical treatment tendered him necessitating the amputation of the finger. In other words, on the second hearing the commission did not even attempt the making of any finding in such particular different from the finding on the first hearing; and had it attempted to do so no such finding on the evidence would have been justified. Thus the commission either avoided making a finding with

respect to such issue, or treated as immaterial the matter so found on the first hearing and upon which the first award was annulled. On application of the company and upon the transmission to this court of all the evidence adduced and proceedings had on both hearings and on a review thereof, the second award in May, 1932, was also annulled by us. *American Smelting & Refining Co.* v. *Industrial Commission,* 79 Utah 302, 10 P. (2d) 918. Among other things, it was there held that, where an award was annulled because of the commission's finding that the employee's injury or disability was caused by an unreasonable refusal to accept medical and surgical treatment, a finding on a rehearing that the disability resulted from the accident did not negative a finding that the unreasonable refusal to accept medical treatment was the proximate cause of the injury or disability.

Thereafter, and on the application of the employee, a further hearing of the case before the commission was set for July 20, 1932. On that day counsel for both parties appeared. The chairman of the commission stated: "The case was set to be heard today and it is understood that the attorneys will not submit evidence but will merely suggest findings." Counsel agreed to that, but stated: "We simply wish to have the entire record of this case (which was all before this court on the second hearing) made a part of the record in this hearing." Both counsel stated that they had no further evidence to present, and none was presented by either party. Each counsel was thereupon given leave to submit findings on the whole record as theretofore made. Each did so, but the commission did not adopt either set of findings, and in August, 1932, made new findings of its own. Both parties were dissatisfied with such findings, and both requested a rehearing, which was granted, and a further hearing set for October 5, 1932. On that day counsel for both parties again appeared. But all that took place on that hearing was with repect to the kind of new findings to be made on the evidence and proceedings of the prior hear-

ings; counsel for the applicant objecting to portions of the findings made by the commission and to the findings as proposed by the company and the company urging findings as proposed by it. Upon further colloquy between the commission and counsel with respect to the findings, the matter was taken under advisement by the commission without any further evidence being offered or presented. On December 16, 1932, the commission made and filed new findings wherein it recited the filing of the original application of the applicant for compensation, the prior hearings had, the prior awards made, and the annulment of them by this court, the rehearing thereafter had on July 20, 1932, at which hearing "all evidence taken at previous hearings and all proceedings had at said hearings were admitted as evidence at that time," and upon that the commission found that the applicant was in the employ of the company; that he was injured February 7, 1929, in the course of his employment and in manner hereinbefore stated; that following the accident the injuries were treated by a physician at Murray, who instructed and directed the applicant to report to Dr. Pugh at Salt Lake City "for X-ray examination and treatment, that the injured employee reported to Dr. Pugh on February 9 but would not permit the doctor or any other doctor to reduce the fracture either with or without anesthetics and that Dr. Pugh applied a simple moist dressing to the wound, the only treatment the injured would consent to"; and that "as a result of this injury as herein described, and the subsequent developments, the applicant contracted a severe infection, resulting in the entire loss of the middle finger of his left hand by amputation and a considerable loss of function in the left hand due to the infection"; that "the loss of function to the left hand at the wrist, including disfigurement, amputation and loss of motion due to infection amounts to and is $33\frac{1}{3}\%$"; and that, "in view of the foregoing findings," the commission again reached the conclusion that the applicant should be paid compensation in addition to that theretofore paid, at the rate of $13.02 per

week for a period of not to exceed 50 weeks, or an aggregate sum of $651 to be paid in a lump sum. Such an award was again made and as was made on the second hearing.

What was meant or intended by the language "subsequent developments" is not apparent. Not anything was shown or found in such respect, no further or additional evidence of any kind offered or presented, and the findings as made based entirely on the evidence and record of the previous hearings without any further or additional evidencee after the annulments of the prior awards. From such last award this review is again prosecuted by the company. Again the whole of the record and all of the evidence adduced and proceedings had on all of the hearings are transmitted to us. In considering the matter, it is essential that there be kept in mind the particular issue or controversy which divided the parties. No issue was presented as to the relation of the parties or that the employee sustained an injury in the course of his employment, or that the applicant, as theretofore found by the commission, was paid "compensation on account of temporary disability as provided by law." What divided the parties from the beginning to the end was whether the permanent partial disability, and for which the awards each time were made, was due to the accident or to the applicant's refusal to submit to proper medical and surgical treatment. On the first hearing it was clearly shown, and the commission found that such disability was due to such refusal. No claim was then made or at any time in any of the proceedings that the treatment tendered was not proper or was not necessary. On the first review we held that the ground upon which the commission excused the applicant's refusal was not sound in law, that the applicant's refusal was unreasonable, and that an injured workman would be denied compensation if the incapacity may be removed or modified by an operation of a simple character or by treatment to which the employee unreasonably refused to submit. On the second hearing, and after the first award was set aside, the commission, on

the same evidence adduced on the first hearing, avoided the making of any finding as to the applicant's refusal to submit to proper treatment tendered him or as to the effect of such refusal, and treated such factor or element, the very controversy in the case, either as immaterial or disregarded it in making the second award. On the last hearing and upon the same evidence adduced upon the second hearing, the commission, while it found the applicant had refused to permit the chief surgeon or any doctor to reduce the fracture or to give any treatment except the application of moist dressings, yet did not find what the effect was of such refusal or any ground or basis for the refusal. It thus, as it did on the second hearing, failed and neglected to find on the real issue. Merely to find as it did that the applicant refused to permit the attending physician to reduce the fracture or treat the case, except by the application of moist dressings, without further finding what the effect was of such refusal, is no better than its silence as to such issue by its findings on the second hearing. If we were right in setting aside the award of the second hearing, it follows that the award on the last hearing must likewise be set aside, for both are founded on the identical evidence and on the same record.

Adjudications of this court may not be obviated or disregarded by the commission merely changing its findings of fact as to a material issue—here as to the only real issue or controversy—upon evidence theretofore adduced and requiring findings as theretofore made, and without any further or additional evidence justifying different findings. In other words, the commission may not shift its findings of fact back and forth like a shuttlecock to meet or overcome adjudications made by this court on a review of a case, and, on the same evidence and without any further or additional evidence, change its findings as to a material issue as often as awards made in the cause are annulled or set aside.

If upon the facts as the commission in the first hearing

in substance found, that the infection requiring amputation of the finger resulted from the refusal of the applicant to submit to proper and necessary medical and surgical treatment, which as held by this court, as matter of law, was an unreasonable refusal barring recovery for any disability which could have been prevented by proper treatment, it follows that, as long as such facts are present, the applicant cannot recover for a disability resulting from such refusal. Such facts and as first found have not been changed or modified by any subsequent or additional evidence. They still are present as a barrier to the applicant's cause. Twice since the annulment of the first award he was given an opportunity, if able to do so, to remove or modify them. Each time he has failed, and at the last hearing made no attempt to do so, assured the commission he had no further evidence to give, and merely asked the commission to make new or further findings on the same evidence and on the same record before this court on the second review and upon which the second award was annulled. Should it be said or assumed that the commission was not required to make specific findings though it undertook to do so, yet without them, and on the record, stands the barrier that the plaintiff's refusal to submit to proper and necessary treatment resulted in a severe infection requiring amputation of the finger and produced the permanent partial disability for which at each hearing awards for compensation were made. That was not overcome at the second hearing, where the applicant himself gave no further testimony, and where the opinions expressed by two doctors in response to hypothetical questions on the second hearing in no substantial degree obviated or modified the barrier, as may be seen by the concurring opinion on the second review of the case [79 Utah 302, 10 P. (2d) 922], and where it is shown that the hypothetical questions did not embody the material facts, eliminated the all-important element that the applicant refused to permit the chief surgeon to give necessary and proper treatment, and in other

particulars embodied facts concerning which there was no evidence. But above all, notwithstanding after the second award was annulled and two further hearings given, no attempt was made by the applicant to offer or present any further evidence, and assured the commission he had no further evidence to present, and merely asked that new findings be made on the same evidence and on the same record which was before this court on a review and annulment of the second award. If the doctrine or principle of the law of the case should be applied to reviews of a case from the Industrial Commission, as we think it should, it ought to be here applied and the litigation ended.

The judgment of this court therefore is that the award be annulled, and, inasmuch as the applicant assured the commission he had no further evidence to offer or present, the case is remanded to the commission, with direction that it be dismissed.

ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.

FOLLAND, Justice (concurring).

I dissented from the decision rendered by this court on the two former occasions this case was here for review. The issues then presented having been determined by a majority of the court, I am now bound thereby. No new issue is presented on this review. I therefore concur.